**STATE OF NEW JERSEY, Plaintiff,**

v.

**William KINDER, Defendant.**

**Crim. No. 88–306.**

United States District Court, D. New Jersey.

Dec. 15, 1988.

---

Samuel A. Alito, Jr., U.S. Atty. by James C. Woods, Asst. U.S. Atty., Newark, N.J., for defendant.

Deborah Hadley, New Brunswick, N.J., pro se.

## OPINION

DEBEVOISE, District Judge.

### NATURE OF THE CASE

This is a criminal case instituted by a private complainant, Deborah Hadley, who charged defendant William Kinder with simple assault and battery in violation of N.J.Stat.Ann. 2C:12–1a. The Municipal prosecutor is not prosecuting this action. Until after argument of the motion addressed in this opinion, Ms. Hadley represented herself, but at trial she will prosecute the action through her private attorney pursuant to New Jersey Municipal Court Rule 7:4–4(b). This case was removed by defendant from the Municipal Court of New Brunswick, New Jersey, to this court pursuant to 28 U.S.C. § 1442(a). Defendant's motion to dismiss pursuant to Fed.R.Crim.P. 12(b) is presently before the court. Defendant contends, *inter alia*, that the authorization in Rule 7:4–4(b) for the use of a private prosecutor is unconstitutional. Despite certification by this court pursuant to 28 U.S.C. § 2403(b), the New Jersey Attorney General's Office has declined to exercise its right to intervene.

### FACTS

Defendant has related the following facts in an affidavit. Ms. Hadley works as a letter carrier in the New Brunswick Section of the United States Post Office in New Brunswick, New Jersey. On June 30, 1988, defendant was the acting supervisor of the North Brunswick Section of that office. It was his responsibility to assure that the letter carriers who serve North Brunswick picked up mail at the post office and delivered it to the residents of North Brunswick.

On June 30, Ms. Hadley was on "partial disability" which restricted her from actually delivering the mail. Instead, she was responsible for casing the mail for delivery. Defendant contends that on numerous occasions on the day in question he observed that Ms. Hadley was not doing her job, but was conducting non-work related conversations with other postal employees. Defendant claims that Ms. Hadley twice refused to obey defendant's order to leave the work floor so that he could reprimand her in private. Ms. Hadley charges that sometime after these refusals defendant committed an assault and battery by pushing her with his body.

A summons was issued to the defendant by the New Jersey Municipal Court on July 7, 1988. The summons and complaint charge defendant with simple assault and battery in violation of N.J.Stat.Ann. 2C:12–1a. The maximum penalty for such an offense is six months in prison and a fine of $1,000. N.J.Stat.Ann. 2C:43–3, 43–8.[1]

On July 29, 1988, defendant removed the Municipal Court action to this court pursuant to 28 U.S.C. § 1442(a). In a letter to defense counsel after the case was removed, the Municipal Prosecutor declined

---

1. The statute provides:

   a. **Simple assault.** A person is guilty of assault if he:

   (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or

   (2) Negligently causes bodily injury to another with a deadly weapon; or

   (3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

   Simple assault is a disorderly persons offense . . .

   The New Jersey Code of Criminal Justice provides that disorderly persons offenses are not considered crimes under the New Jersey Constitution and thus do not entail the right to indictment by grand jury or trial by jury. N.J.Stat.Ann. 2C:1–4. The Code further provides that "conviction of such offenses shall not give rise to any disability or legal disadvantage based on the conviction of a crime." *Id.*

to prosecute stating that his "prosecutorial powers are limited to the Municipal Court, City of New Brunswick" and therefore it is "inappropriate" for him to prosecute matters in any other court. The prosecutor also stated that "Citizen Complaints" like the one involved in this matter "are not prosecuted by the Municipal Prosecutor."

## DISCUSSION

■ A threshold issue to be resolved in this case is whether the New Jersey Municipal Court Rule 7:4–4(b) must be applied, despite the fact that this former Municipal Court action was removed to federal court. It is firmly established that when a criminal case is removed from state to federal court, the federal court must conduct the trial under federal rules of procedure, while applying the criminal law of the state. *State of Arizona v. Manypenny*, 451 U.S. 232, 241, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (1981) *rehearing denied*, 452 U.S 955, 101 S.Ct. 3100, 69 L.Ed.2d 965 (citing *Tennessee v. Davis*, 100 U.S. 257, 271–72, 25 L.Ed. 648 (1880)). There is, however, sound authority which requires that Rule 7:4–4(b) be applied in this case.

New Jersey Municipal Court Rule 7:4–4(b) provides:

> Appearance of Prosecution. Whenever in his judgment the interests of justice so require, or upon the request of the court, the Attorney General, county prosecutor, municipal court prosecutor, or municipal attorney, as the case may be, may appear in any court on behalf of the state, or of the municipality, and conduct the prosecution of any action, but if the Attorney General, county or municipal court prosecutor or municipal attorney does not appear, **any attorney may appear on behalf of any complaining witness and prosecute the action on behalf of the state or the municipality.**

(emphasis added).[2] This Rule contains both procedural and substantive rights, allowing a complaining witness who is the victim of a disorderly persons offense to enforce the criminal law in cases where the state or municipality lacks the resources to do so.[3] The importance of the Rule becomes evident when one realizes that absent its use, disorderly persons offenses would go unprosecuted, harming not only the state's interest in enforcing its laws, but also the victim's (if not society's) interest in obtaining satisfaction for wrongs committed. Beyond the importance of this rule, it is significant that there is no provision of the Federal Rules of Criminal Procedure which conflicts with its provisions. Thus, the instant case does not present circumstances previously addressed by the Supreme Court in the context of civil removal cases. Those civil cases involved circumstances where a state procedural rule conflicted with a federal rule; in such circumstances the Court required that federal courts exclusively apply the federal rule. *See e.g., Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987); *Hanna v. Plumer*, 380 U.S. 460, 469–74, 85 S.Ct. 1136, 1142–46, 14 L.Ed.2d 8 (1965).

The present case presents issues similar to those discussed by the Supreme Court in *Arizona v. Manypenny*, 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981), a criminal removal case. In *Manypenny*, the Court confronted the delicate balance between state and federal law which is involved in

---

**2.** This Rule is part of the New Jersey Court Rules promulgated by the Supreme Court of New Jersey under the authority of Article VI, Section II, paragraph 3 of the New Jersey Constitution of 1947 which provides in part: "The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts."

**3.** In *Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 328 n. 21 (D.N.J.1978), Judge Gerry (now Chief Judge) discussed Rule 7:4–4(b) as follows:

> ... it is common for disorderly persons offenses to be tried before the magistrate by private counsel on behalf of the complaining witness because many localities lack prosecutorial resources; the prosecution of such offenses by appointed counsel fills a public need and advances the criminal process.

While I share in the observations of Chief Judge Gerry, the failure of the New Jersey Attorney General's Office to intervene in this matter has made it difficult to make additional findings of fact with respect to the use of Rule 7:4–4(b) in New Jersey municipal courts.

criminal cases removed from state to federal court under 28 U.S.C. § 1442(a). The defendant in *Manypenny* was a Border Patrol Agent with the Immigration and Naturalization Service ("INS"), who was charged in state court with the state offense of assault with a deadly weapon. The state court action was removed to federal district court because the defendant committed the alleged assault while on duty with the INS. After the defendant was found guilty by a jury, the district court, acting *sua sponte*, granted a motion for acquittal based on federal immunity, despite the fact that immunity was not raised as a defense at trial. The state timely filed an appeal with the Court of Appeals, but that appeal was dismissed based on a lack of jurisdiction. The Court of Appeals held that a criminal proceeding removed under 28 U.S.C. § 1442(a)(1) was governed by federal law which did not provide a right for a state to appeal a criminal case in federal court. Thus, the Court of Appeals held that the state could not appeal the district court's decision.

Reversing the Court of Appeals, the Supreme Court held that Arizona could rely on appellate authorization under state law as a basis for its right to appeal.[4] The *Manypenny* Court held that it "would be anomalous to conclude that the State's appellate rights were diminished solely because of removal." 451 U.S. at 243, 101 S.Ct. at 1665. The Court further held:

> ... the invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied. In this respect, it is purely a derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties.

451 U.S. at 242, 101 S.Ct. at 1664. The *Manypenny* Court also recognized a "'strong judicial policy against federal interference with state criminal proceedings.'" *Id.* at 243, 101 S.Ct. at 1665 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95

S.Ct. 1200, 43 L.Ed.2d 482 (1975)). Moreover, the Court stressed that the purpose of section 1442(a)(1) is to ensure a neutral forum for federal employees who might be subject to prejudice in state courts and not to alter the rights of parties provided by state law. *Id.* 451 U.S. at 242, 101 S.Ct. at 1664.

In the instant matter, as in *Manypenny*, it would be anomalous to conclude that the state's right to prosecute the defendant through the use of a private attorney was diminished solely because of removal. *See Manypenny*, 451 U.S. at 253, 101 S.Ct. at 1670. If this case were tried in New Brunswick Municipal Court where it originated, it is beyond question that a private attorney could prosecute the disorderly persons charge initiated by Ms. Hadley. It would therefore be unjust for this court to dismiss this prosecution merely because it was removed to federal court. As noted above, the inadequate resources of municipal prosecutors necessitates the use of private attorneys. To refuse to permit private attorneys to appear in federal court would create an undesirable double standard wherein federal employees who commit a disorderly persons offense would not be prosecuted, while all other citizens of New Jersey would be. Such a result ignores both the limited purpose of federal removal provisions and the strong judicial policy against federal interference with state criminal proceedings recognized in *Manypenny* and *Huffman, supra*. For these reasons, I find that New Jersey Municipal Court Rule must be applied in this case.

■■■ Having found that Rule 7:4–4(b) is applicable to this case, it is necessary to consider defendant's contention that the Rule violates his constitutional right to due process, including his right to a fair trial. *See e.g., Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984) (discussing the right

---

**4.** Since *Manypenny* involved federal appellate jurisdiction it was necessary for the Court to determine not only whether Arizona had the right to appeal, but also whether the federal courts had appellate jurisdiction to hear such an appeal. The Court found that 28 U.S.C. 1291

permits a state to appeal to the Court of Appeals if the state is authorized to do so by state law. *Manypenny*, 451 U.S. at 249, 101 S.Ct. at 1668. This issue of appellate jurisdiction is not relevant to the instant matter.

to a fair trial as an element of the Due Process Clause and the Sixth Amendment). The defense contends that permitting Ms. Hadley's attorney to prosecute defendant would be unconstitutional because there is an impermissible conflict of interest between Ms. Hadley's attorney's role as private counsel and his role as the prosecutor in this case. More specifically, defendant argues that there is an inherent conflict which exists when a prosecutor has a pecuniary or other interest in the outcome of a criminal prosecution. Such a conflict was acknowledged in *United States v. Heldt*, 668 F.2d 1238, 1277 (D.C.Cir.1981) *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed. 2d 440 (1982), where the Court stated:

> ... a public prosecutor, as the representative of the sovereign, must "seek justice —to protect the innocent as well as to convict the guilty." ...

Our system of justice accords the prosecutor wide discretion in choosing which cases should be prosecuted and which should not. If the prosecutor's personal interest as the defendant in a civil case will be furthered by a successful criminal prosecution, the criminal defendant may be denied the impartial objective exercise of that discretion to which he is entitled. *Id.* at 1275–76. The defense in this case contends that this type of conflict renders Ms. Hadley's private attorney incapable of both faithfully representing Ms. Hadley's interests and simultaneously exercising the duties of a prosecutor. Those prosecutorial duties include the duty to disclose evidence favorable to the accused, *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (discussing the various duties of a criminal prosecutor), and the duties imposed by the New Jersey Rules of Professional Conduct which impose additional disclosure requirements and require that a prosecutor refrain from prosecuting a charge which is not supported by probable cause.[5]

Defendant urges that the holding in *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) requires that this court forbid the prosecution of defendant by a private attorney. In *Vuitton*, the Supreme Court reversed the criminal contempt convictions of five defendants who allegedly violated a preliminary injunction prohibiting them from further infringing on a leather-goods manufacturer's trademark. The Court reversed the convictions because defendants were prosecuted by private attorneys who had represented the leather-goods manufacturer in the underlying trade mark litigation. *Vuitton*, however, is distinguishable in two important respects from the issue presented here. First, *Vuitton* involved a criminal contempt proceeding in the federal courts which was disposed of not on constitutional grounds, but rather on the Supreme Court's use of its supervisory power.[6] Second, the defendants in *Vuitton* were given sentences ranging up to five years, far exceeding the maximum exposure for a disorderly persons offense which is the subject of the present case.

Despite the fact that *Vuitton* is not controlling here, it is useful in identifying areas of concern which arise when a private attorney is allowed to conduct a criminal prosecution. These concerns are present even in a case like the present one involving a disorderly persons offense. They are not, however, of the same magnitude in such cases. The *Vuitton* Court noted the intolerable ethical tension which resulted when a private litigator, who had "an interest in obtaining the benefits of the court's

---

**5.** Rule 3.8 of the New Jersey Rules of Professional Conduct provides, in part:

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

\* \* \* \* \* \*

(d) make timely disclosure to the defense of all evidence known to the prosecutor that supports innocence or mitigates the offense ...

**6.** The *Vuitton* Court stated: "we rely on our supervisory authority to avoid the necessity of reaching any constitutional issues." 481 U.S. at —— n. 21, 107 S.Ct. at 2138 n. 21, 95 L.Ed.2d at 760 n. 21.

order," acted as the criminal prosecutor, who is supposed to be "appointed solely to pursue the public interest in vindication of the court's authority." 481 U.S. at —, 107 S.Ct. at 2136, 95 L.Ed.2d at 757. To be sure, this ethical tension is also present in the instant matter, where a private attorney is hired by the complaining witness to prosecute a disorderly persons offense. It cannot be denied that Ms. Hadley's attorney may have an interest, albeit speculative, in fees resulting from a civil suit which may follow this action if the defendant is convicted. Similarly, her attorney has duties owing to her as a paying client which may conflict with the duties of a criminal prosecutor. However, any conflict of interest arising out of the situation presented here does not constitute a violation of due process under the circumstances of this case.[7]

State courts which have invalidated criminal prosecutions by private attorneys have done so in cases involving serious crimes and those involving situations where a public prosecutor has expressly refused to prosecute the defendant.[8] There is, however, a dearth of cases which discuss private prosecutions of disorderly persons charges or other petty offenses. One lower New York court considering this issue noted: "the right of the complainant to prosecute the case by himself or to hire an attorney to assist him has never been doubted." *People v. Wyner*, 207 Misc. 673,

142 N.Y.S.2d 393 (County Court, Westchester County, 1955); *see also, People on Complaint of Allen v. Citadel Management Co., Inc.*, 78 Misc.2d 626, 631, 355 N.Y.S.2d 976 (Criminal Court, City of New York 1974), *rev'd. on other grounds*, 80 Misc.2d 668, 365 N.Y.S.2d 121 (1975).

I am mindful that the issue here concerns a widespread practice in the municipal courts of New Jersey and embodied in Rule 7:4–4(b) which allows citizens to enforce the laws of the state in instances where the municipal prosecutor routinely does not prosecute because of a lack of resources.[9] As I noted earlier, it is apparent that the practicalities of the situation are such that absent this practice the sanctions of the disorderly persons statutes would be unavailable in large numbers of cases throughout New Jersey. Moreover, the possible intrusions which the practice under Rule 7:4–4(b) may impose on the liberty interests of an accused is minimal, since the Rule only applies to cases before the Municipal Court which has jurisdiction over a limited number of criminal offenses which are accompanied by jail terms not exceeding six months and fines not exceeding $1,000. N.J.Stat.Ann. 2A:8–21; 2C:43–3, 43–8. The United States Supreme Court has itself recognized that the full panoply of procedural protections is not required where lesser charges are involved and minimal punishment is authorized. *See e.g., Duncan v. Louisiana*, 391 U.S. 145, 88

---

**7.** Absent a violation of defendant's constitutional rights, there is no basis for invalidating the use of a private prosecutor in this case. Unlike the Court in *Vuitton*, this court may not use its supervisory power to invalidate this practice because it is authorized by state law and is not a product of the federal courts' inherent power.

**8.** *See e.g., State v. Harton*, 163 Ga.App. 773, 296 S.E.2d 112 (1982) (prohibiting private prosecution for vehicular homicide absent consent and oversight of the district attorney); *State ex rel. Wild v. Otis*, 257 N.W.2d 361 (Minn.1977), *appeal dismissed*, 434 U.S. 1003, 98 S.Ct. 707, 54 L.Ed.2d 746 (1978) (where county attorney refused to prosecute and grand jury refused to indict on charges of perjury conspiracy and corruptly influencing a legislator, private citizen could not prosecute and maintain such charges; dicta suggesting this might be permissible with legislative approval and court appointed private attorney as prosecutor); *see also, Common-*

*wealth v. Eisemann*, 308 Pa.Super. 16, 453 A.2d 1045 (1982) (Pennsylvania Rules of Civil Procedure require that a person who is not a police officer must get the district attorney's approval to file felony or misdemeanor charges which do not involve a clear and present danger to the community); *People ex rel. Luceno v. Cuozzo*, 97 Misc.2d 871, 412 N.Y.S.2d 748 (City Court, White Plains 1978) ("exercising its discretion," court prohibits private criminal prosecution against police officer where complainant was charged with a criminal offense arising out of same occurrence).

**9.** The practice of using private attorneys to prosecute criminal offenses is apparently derived from English common law. Until the late nineteenth century English criminal procedure relied heavily on a system of private prosecution even for serious offenses. PLOSCOWE, 48 Harv.L.Rev. 433, 469–71 (1935).

**492**

S.Ct. 1444, 20 L.Ed.2d 491 (1968) (right to trial by jury provided in Bill of Rights does not apply to crimes with possible penalties of six months or less, if such crimes otherwise qualify as petty offenses). This rationale would seem to apply with full force in the present situation.

There are several compelling reasons to uphold New Jersey's Municipal Court Rule. The Rule facilitates a kind of peoples' court wherein citizens may bring their disputes and uphold the laws of the community through the uncomplicated procedures of the municipal court. While there is the possibility of frivolous suits and vindictive behavior by some complainants, abuses are checked and deterred by the court's discretion and by the various other remedies available for malicious prosecution. The possibility for prosecutorial abuses under this system is not fantasy, but in the present case there is little chance that the defendant will suffer even the slightest injustice, especially considering the quality of his defense. It is indeed a rare instance where, as here, a defendant charged with a disorderly persons offense has the Office of the United States Attorney and all of its resources at his disposal to defend against the charge.

It is important to emphasize that this is not a case involving an offense arising under federal law subject to prosecution by federal authorities. Nor is this a prosecution for a felony or misdemeanor which can result in a criminal record, a lengthy jail term and a loss of certain privileges of citizenship. This is not a prosecution for criminal contempt which also involves the possibility of a lengthy jail term in addition to the more concrete conflicts of interest which exist when an attorney prosecutes a person in a criminal matter while simultaneously representing that person's opponent in an underlying civil matter. *See, e.g., Vuitton, supra.* This is also not a case where the public prosecutor has declined to prosecute the defendant after expressly finding that there is no probable cause for such action. In all of those

cases, I have no doubt that a private attorney would be precluded by the United States Constitution, the federal courts' supervisory power and/or federal statutes and rules from conducting a criminal prosecution. The instant case, however, is decided in the context of a state disorderly persons charge where the term of imprisonment does not exceed six months.

For the reasons set forth above, defendants' motion to dismiss will be denied.[10]

---

**10.** After the denial of this motion, but before issuance of this opinion, a trial was held and the defendant William Kinder was found not guilty.