661 A.2d 790

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
RICHARD STORM, DEFENDANT–RESPONDENT.

Argued May 1, 1995—Decided July 17, 1995.

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for appellant (*Robert W. Gluck,* Middlesex County Prosecutor, attorney).

*Richard S. Lehrich* argued the cause for respondent.

*Anne C. Paskow,* Assistant Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

*James A. Carey* argued the cause for *amicus curiae* The Monmouth County Municipal Prosecutors Association (*Carey and Graham,* attorneys).

*Carl J. Herman* argued the cause for *amicus curiae* Association of Criminal Defense Lawyers.

*Edward G. Sponzilli* submitted a brief on behalf of *amicus curiae* Rutgers, The State University of New Jersey (*Dunn, Pashman, Sponzilli & Finnerty,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

At issue is whether *Rule* 7:4–4(b) permits private counsel for a complainant to prosecute a complaint in the municipal court. The Woodbridge Municipal Court permitted Robert Hedesh, Esq., private counsel for complainant, Pamela Young, to prosecute complaints against defendant, Richard Storm, for stalking, contrary to *N.J.S.A.* 2C:12–10b, and harassment, contrary to *N.J.S.A.* 2C:33–4. After the Law Division denied Storm's motion for leave to appeal, the Appellate Division granted leave and reversed. It held that Hedesh had a conflict of interest that impinged on Storm's right to a fair trial. 278 *N.J.Super.* 287, 650 *A.*2d 1031 (1994).

We granted the Middlesex County Prosecutor's motion for leave to appeal, 139 *N.J.* 437, 655 *A.*2d 440 (1995), and affirm. We hold that whenever an attorney for a private party applies to prosecute a complaint in the municipal court, the court should determine whether to permit the attorney to proceed. We hold further that Hedesh should not be allowed to prosecute Storm.

I

This case arises from the volatile relationship between Young and Storm. The record, although sparse, reveals the following facts. Young filed three complaints in the Woodbridge Municipal Court against Storm: two for stalking and one for harassment. After downgrading the stalking charges to harassment and disorderly-persons offenses, the Middlesex County Prosecutor remanded the charges to the municipal court. The maximum sentence for each offense is six months, *N.J.S.A.* 2C:43–8, and a fine of $1,000, *N.J.S.A.* 2C:43–3.

Since the occurrence of the events that gave rise to this appeal, the hostility between Storm and Young has spread to the Law Division. At the time of oral argument in the Appellate Division, Storm had been indicted for stalking Young. 278 *N.J.Super.* at 290, 650 *A.*2d 1031. Since then, the Law Division has dismissed the indictment on the motion of the Middlesex County Prosecutor. More recently, a Morris County Grand Jury has indicted Young for attempting to murder and conspiring to murder Storm.

Like virtually all other municipalities, Woodbridge employs a prosecutor. The Woodbridge prosecutor does not prosecute private complaints. Here, for example, the prosecutor requested Hedesh to prosecute the complaints against Storm.

While the Municipal Court charges were pending against him, Storm filed a complaint against Young in the Special Civil Part of the Superior Court. The complaint alleged that Young intentionally had issued to Storm a bad check for vacation expenses. Hedesh represented Young in defending the complaint.

In the municipal court, Storm's attorney, Richard Lehrich, moved to disqualify Hedesh as prosecutor. Lehrich argued that Hedesh's representation of Young in the civil action prevented him from acting as an impartial prosecutor. The municipal court denied the motion and ordered that Hedesh could prosecute the municipal court complaints.

The Appellate Division reversed and directed the municipal court to order the municipal prosecutor to prosecute the complaints. The court held:

> *R.* 7:4–4(b) is to be utilized to permit private counsel to prosecute only as a last resort and only in those circumstances where a full disclosure of possible conflicts does not disclose so direct and serious a conflict as to violate due process or otherwise preclude the defendant from receiving a fair trial.
>
> [278 *N.J.Super.* at 294–95, 650 *A.*2d 1031.]

## II

*Rule* 7:4–4(b) states:

> Appearance of Prosecution. Whenever in his or her judgment the interests of justice so require, or upon the request of the court, the Attorney General, county

> prosecutor, municipal court prosecutor, or municipal attorney, as the case may be, may appear in any court on behalf of the State, or of the municipality, and conduct the prosecution of any action, but if the Attorney General, county or municipal court prosecutor or municipal attorney does not appear, *any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the State or the municipality.*

[Emphasis added.]

The rule perpetuates the practice of private prosecution, which traces its origins to ancient England. Private prosecution derives from the practice of trial by combat, which evolved into the prosecution of criminal charges by private parties. Sir James Stephen, *A History of the Criminal Law of England* 245 (1883). By the early nineteenth century, Britain's system of private prosecution was in retreat. *See* Andrew Sidman, Comment, *The Outmoded Concept of Private Prosecution,* 25 *Am.U.L.Rev.* 754, 760 (1976); Judson Hand, Note, *Primitive Justice: Private Prosecutions in Municipal Court Under New Jersey Rule 7:4–4(b),* 44 *Rutgers L.Rev.* 205, 212 (1991). In 1879, Parliament created the Office of Public Prosecutions, which prosecuted serious crimes. Twenty-nine years later, Parliament enacted the Prosecution of Offenses Act, which allows the Director of Public Prosecutions to supersede a private prosecution. Hand, *supra,* 44 *Rutgers L.Rev.* at 212. Although uncommon in England today, private prosecution survives. *Id.*

English justice became the dominant influence in the development of New Jersey's criminal justice system. See Newman & Doty, *Bench and Bar,* in I *The Story of New Jersey* 363 (William Starr Meyers ed.1945) (relating history of judicial development in New Jersey). By the eighteenth century, New Jersey had established an extensive system of public prosecution. Even so, in the last century, the former New Jersey Supreme Court described private prosecution as "the settled practice in this State...." *Gardner v. State,* 55 *N.J.L.* 17, 33, 26 *A.* 30 (1892). Notwithstanding the reforms of the judicial and criminal justice systems in the 1947 Constitution, the practice of private prosecution has survived.

Both this Court and the Legislature continue to recognize the role of private prosecutors. In addition to the recognition of

private prosecutors in municipal courts contained in *Rule* 7:4–4(b), *Rule* 3:23–9(d) of the Rules Governing Criminal Practice defines a prosecuting attorney: "With the consent of the court, the attorney for a complaining witness or other person interested in the prosecution may be permitted to act for the prosecuting attorney."

In addition, *N.J.S.A.* 19:34–63, relating to election law, provides in part: "Any citizen may employ an attorney to assist the prosecutor of the pleas to perform his duties under this title, and such attorney shall be recognized by the prosecutor of the pleas and the court as associate counsel in the proceedings."

### III

Our evaluation of private prosecutions begins with the role of municipal courts. As the late Chief Justice Vanderbilt once wrote:

> On them rests the primary responsibility for the maintenance of peace in the various communities of the state, for safety on our streets and highways, and most important of all, for the development of respect for law on the part of our citizenry, on which in the last analysis all of our democratic institutions depend.
>
> [Arthur T. Vanderbilt, *The Municipal Court—The Most Important Court in New Jersey*, 10 *Rutgers L.Rev.* 647, 650 (1956).]

Apart from cases involving motor vehicles, municipal courts decide such matters as violations of health or zoning ordinances, disorderly-persons offenses, and various quasi-criminal cases. The volume is high. In 1994, for example, municipal courts disposed of 5.6 million cases. Because of the heavy caseload, municipal prosecutors cannot prosecute every complaint. "The general rule is that the prosecutor's involvement is limited to those complaints signed by police officers." Supreme Court Task Force on the Improvement of Municipal Courts, *Report to the 1985 Judicial Conference* 112–13 (1985) (hereinafter "Report").

By permitting private citizens, acting either *pro se* or through private counsel, to appear in municipal court, *Rule* 7:4–4(b) facilitates access to municipal courts. Although the practice of private prosecution in municipal courts remains useful, the

question is whether the benefits of the practice outweigh its burdens.

Over the centuries, perceptions of justice have evolved. Trial by combat has yielded to trial in court. Central to a judicial proceeding is the right to a fair trial before an impartial judge. In criminal or quasi-criminal cases, the need for impartiality extends beyond the judge to the prosecutor.

The challenge is to respect the defendant's right to a fair trial while preserving the contribution of private prosecutors to the disposition of complaints in the municipal courts. See John D. Bessler, *The Public Interest and the Unconstitutionality of Private Prosecutors*, 47 *Ark.L.Rev.* 511, 594–601 (1994) (concluding that private prosecution is unethical and violates defendant's constitutional rights); Joan Meier, *The Right to a Disinterested Prosecutor of Criminal Contempt*, 70 *Wash.U.L.Q.* 85, 128 (1992) (arguing that states should be free to adopt their own policies on whether disinterested prosecutor of contempt is required); Sidman, *supra*, 25 *Am.U.L.Rev.* 754 (evaluating various issues raised by system of private prosecution and arguing practice is outdated, unnecessary, unethical, and perhaps unconstitutional). Without private prosecutors, some cases, such as disorderly-persons offenses, would not be prosecuted, *see State v. Kinder*, 701 *F.Supp.* 486, 491 (D.N.J.1988); *Voytko v. Ramada Inn of Atlantic City*, 445 *F.Supp.* 315, 328 n. 21 (D.N.J.1978); *see also State v. Imperiale*, 773 *F.Supp.* 747, 748 (D.N.J.1991) (stating that in many instances prosecutor, "because of the nature of the complaint combined with limited resources, chooses not to prosecute a particular complaint or category of complaints ...'). The best argument for continuing private prosecutions is one of necessity: without private prosecutions some wrongs would not be set right.

The overarching argument against private prosecutors is the risk they pose to a defendant's right to a fair trial. *Kinder, supra*, 701 *F.Supp.* at 489. A private prosecutor's dual responsibilities to the complaining witness and to the State breed numerous problems. Representation of the complainant in a related civil

action could invest the prosecutor with a monetary interest in the outcome of the matter. That risk is particularly high if the prosecutor has agreed to receive a contingent fee in the civil action. *Imperiale, supra,* 773 *F.Supp.* at 750; *Kinder, supra,* 701 *F.Supp.* at 490–91. Even in the absence of actual conflict, the appointment as prosecutor of an attorney for an interested party creates the appearance of impropriety. *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 *U.S.* 787, 805–06, 107 *S.Ct.* 2124, 2136–37, 95 *L.Ed.*2d 740, 757 (1987); *Imperiale, supra,* 773 *F.Supp.* at 751–52.

■ Conflicting interests, moreover, can undermine a prosecutor's impartiality. The loss of impartiality can affect the prosecutor's assessment of probable cause to proceed; the disclosure of exculpatory evidence, *see State v. Cantor,* 221 *N.J.Super.* 219, 534 *A.*2d 83 (App.Div.1987) (reversing conviction because private prosecutor failed to provide exculpatory information), *cert. denied,* 110 *N.J.* 291, 540 *A.*2d 1274 (1988); and the willingness to plea bargain, *Imperiale, supra,* 773 *F.Supp.* at 751–52. Also implicated are the prosecutor's ethical obligation "to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." *Model Rules of Professional Responsibility* 3.8, cmt. (1994). In addition, private prosecutions pose the risk that the complainant will use the municipal court proceeding to harass the defendant or to obtain an advantage in a related civil action. *Imperiale, supra,* 773 *F.Supp.* at 748; *see also State v. Long,* 266 *N.J.Super.* 716, 726–27, 630 *A.*2d 430 (Law Div.1993) (noting reasons for *Rule* 7:4–4(b) and risks of applying *Rule* ); *State v. Harris,* 262 *N.J.Super.* 294, 620 *A.*2d 1083 (Law Div.1992) (holding that private prosecution could proceed because no potential for unfair conflict of interest existed).

Ten years ago, the Supreme Court Task Force on the Improvement of Municipal Courts concluded that the burdens of private prosecutions outweighed their benefits. It recommended "that every municipal court have a prosecutor, charged with the responsibility of prosecuting *every* complaint—whether it is filed by a

police officer, a private citizen or even if it results in a civilian cross-complaint situation." *Report, supra,* at 113–14. Based in part on the Report, the New Jersey Law Revision Commission submitted a *Report and Recommendations* that "modernizes and clarifies the law on municipalities." New Jersey Law Revision Commission, *Report and Recommendations on the Municipal Courts* (1991). Included in the Law Revision Report was a section requiring every municipality to appoint a prosecutor. *Id.* at 13. The section was included in Senate Bill 875, but eliminated in committee. Consequently, the section was omitted from *N.J.S.A.* 2B:12–1 to –31, *L.* 1993, *c.* 293. More recently, the Senate passed Senate Bill 967, which requires a municipal prosecutor in every municipal court. S–967, 206th Leg. 1st Sess. (1994). Section 5(b) of the bill, however, permits the continuation of private prosecutors, providing in relevant part: "A municipal prosecutor may, with the approval of the court, authorize private attorneys to prosecute citizen complaints filed in the municipal court." On September 19, 1994, that bill was referred to the Assembly Judiciary, Law and Public Safety Committee, where it awaits action.

A mere list of the arguments for and against private prosecutors fails to capture the valuable, if troublesome, role of municipal courts in resolving private disputes. A municipal court is "the people's court." Municipal courts remain a place in which people, sometimes on the verge of violence, can seek relief. In effect, municipal courts provide a safety valve for society. By providing access to impartial judges, municipal courts forestall violence and encourage the peaceful resolution of disputes.

For a municipal court to provide an effective forum, both the complainant and the defendant must trust the impartiality of the proceedings. To earn that trust, the prosecutor, like the judge, must be impartial. Inevitably, private prosecutions undermine confidence in the integrity of the proceedings.

Confronted with an imperfect practice, the judicial task is to preserve the integrity of municipal courts, protect the rights

of defendants, and to make the system work. Ultimately, the discharge of those responsibilities rests with municipal court judges. To assist municipal courts in the exercise of their discretion, we request the Committee on Municipal Courts to recommend guidelines governing the appointment of private prosecutors in those courts. Until we adopt such guidelines, an attorney wishing to appear as a private prosecutor should notify the municipal prosecutor and the court. If the municipal prosecutor insists on proceeding with the prosecution, the prosecutor's decision should be final. In all other cases, the private attorney should disclose in a written certification all facts that foreseeably may affect the fairness of the proceedings. The propriety of appointing a private prosecutor will vary from case-to-case, depending on the facts of each case. *Harris, supra,* 262 *N.J.Super.* at 302, 620 *A.*2d 1083.

■ The relevant facts include the identity of the complainant, indicating (1) whether the complainant is an individual, a business (such as a department store), or an entity with its own police department (such as Rutgers University); (2) any actual conflict of interest arising from the attorney's representation of, and fee arrangement with, the complainant; (3) any civil litigation, existing or anticipated, between the complainant and the defendant; (4) whether the defendant is, or is expected to be, represented by counsel; and (5) any other facts that reasonably could affect the impartiality of the prosecutor and the fairness of the proceedings or otherwise create the appearance of impropriety.

We recognize that in certain cases, disqualification of private counsel as prosecutor will result in a complainant proceeding *pro se.* Pursuant to *Rule* 1:40–7, municipal court judges can refer many such cases, particularly those involving minor family or neighborhood disputes, to mediation.

■ Given the acrimonious relationship between Storm and Young, including their lengthy litigious history, we find that Hedesh's obligations to Young as her private attorney creates at least the appearance that he could not act as a private prosecutor

with impartiality. The burden on defendant's right to a fair trial and on the public interest in impartial proceedings outweighs any benefit that would accrue from permitting Hedish to proceed as the prosecutor.

The judgment of the Appellate Division is affirmed.

For affirmance—Chief Justice WILENTZ, and Justices POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN–6.

*Opposed*—None.