822 A.2d 611 (2003)
360 N.J. Super. 208
STATE of New Jersey, Plaintiff-Respondent,
v.
J. Garvin WALSH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 2003.
Decided May 9, 2003.
Matthew C. Wronko argued the cause for appellant (Hanlon and Dunn, attorneys; Gerard E. Hanlon, of counsel; Mr. Wronko, on the brief).
Brian D. Kenney, Assistant Prosecutor, argued the cause for respondent (Michael M. Rubbinaccio, Morris County Prosecutor, attorney; Joseph Connor, Jr., Assistant Prosecutor, on the brief).
Before Judges STERN, COBURN and COLLESTER.[1]
The opinion of the court was delivered by STERN, P.J.A.D.
Defendant appeals from a conviction, on trial de novo in the Law Division, of harassment, N.J.S.A. 2C:33-4, on a complaint filed by his daughter, Mariana. He argues that he "is not guilty of N.J.S.A. 2C:33-4 since the conduct alleged involves, normal, protected interaction between family members that the Legislature did not intend to criminalize," that he "is not guilty of any subsection of N.J.S.A. 2C:33-4 since he did not act with a purpose to harass or ... alarm or seriously annoy," and that the State did not prove that he violated the elements of subsection (a) or (c) of the harassment statute. The State *612 notes that the Law Division amended the municipal court conviction under N.J.S.A. 2C:33-4 (c) to one finding defendant guilty under subsection (a), and argues that there is sufficient evidence on which to convict under that subsection.
These are the facts as described by the State:
In June 2001, defendant and his wife, Marjorie, were in the middle of an acrimonious divorce. The Hon. Deanne M. Wilson, J.S.C., was scheduled to interview defendant's 18-year-old daughter, Mariana, and her sister, Julia, on June 13, 2001 as part of the divorce action.
June was a busy month for Mariana. She was scheduled to perform at a piano recital in New Vernon on June 6th and was to graduate from high school the next weekend. Mariana performed at the recital, which defendant attended and which ended at about 9:30 p.m. At his request, she drove to his house in Harding after the recital. He told her he wanted to discuss something with her.
Mariana drove there in her 1991 Saab. Defendant owns this car. His older daughter, Amanda, had used it and Mariana got it when Amanda went away to college. Mariana had used it since she had gotten her license about a year earlier. At defendant's house that evening, they went to the den. Mariana sat on a chair while defendant sat next to her on the couch.
He began to tell her that she was ignorant with respect to his expenses. He spoke to her in "this horrible tone of voice ... (y)ou can't understand really until you've heard it ..." She described his tone of voice as "scary" and sounding as if he was about to go "crazy." She noted that he often gets "crazy" when he speaks to her of finances. He pulled out a two-page financial document and put it on her lap. He hit the document with a ruler to point out figures that he wanted her to read. His apparent point was that he had spent $206,851.45 on her, her sisters and her mother the previous year. As he hit the financial statement with his ruler, he hit Mariana's leg, which was under the document. He forced her to read certain figures.
Mariana was upset and began to cry. She told defendant that his conduct was "ridiculous" and tried to take the ruler from him. He held onto it. As she tried to leave, he tried but failed to snatch her car keys out of her hand.
Mariana eventually got out of his house. Defendant went out a different door and yelled to her to come back. Because he was by her car, she could not drive off. Instead, she hid in the bushes.
Defendant took a spare set of keys and drove off in Mariana's car, leaving her stranded. Eventually, she reached her mother on her cell phone and had her mother pick her up.
As they drove to nearby Bernardsville for gas, Mariana noticed a message from defendant on her cell phone. The message said that she had better come back to his house. If she did not, he said, she would not have her car for her high-school graduation the next weekend. When Mariana and her mother got home, they saw that defendant had already been there. He had dumped several items that had been in Mariana's car.
Upon the advice of Mrs. Walsh's matrimonial attorney, Mariana signed a criminal complaint against defendant.

*613 [ (Footnotes and citations to the record omitted and some paragraphs combined).]
This is not a domestic violence case, but there was no dispute at the argument before us that the event would not warrant a final restraining order based on harassment. Corrente v. Corrente, 281 N.J.Super. 243, 657 A.2d 440 (App.Div.1995); Peranio v. Peranio, 280 N.J.Super. 47, 654 A.2d 495 (App.Div.1995). The case involves a disagreement between a father and his 18-year-old unemancipated daughter about finances, which became an argument resulting in his threat to take away the car and other privileges. Such arguments occur frequently in many families. In fact, we can infer that but for the matrimonial proceedings, the mother's attorney would not have recommended or counseled her about filing the complaint.[2] In essence, we are asked to sustain a harassment conviction when we would not uphold a finding of harassment as a basis for a final restraining order.
The State argues that we should uphold the conviction because much of what was argued and developed in the municipal court proceedings is irrelevant as the complaint was amended in the Law Division to a violation of subsection (a), that a "course of conduct" is not required thereunder, that the prosecutor proved a "purpose to harass," and that the communications in question were made "in a manner likely to cause annoyance or alarm" to defendant's 18-year-old daughter on the night of a piano recital a week or two before her high school graduation. We disagree.
First of all, we have a record made in the municipal court, and while there can be an amendment on a municipal appeal of the statutory basis for conviction, see R. 3:23-8(c), here the prosecutor was apparently an attorney retained by the complainant's mother upon recommendation of one of her attorneys, and the private prosecutor was permitted to proceed without findings necessary for such approval under R. 7:8-7(b). See also State v. Storm, 141 N.J. 245, 255-56, 661 A.2d 790 (1995). That may not, of itself, be controlling where there was no objection or no prejudice, but it is relevant here because the Family Part declined to exercise jurisdiction on defendant's application for a transfer "to be part of the matrimonial-family action only because the matter was already "scheduled for hearing in municipal court," the Family Part could not "schedule the matter" as quickly as the municipal court, and it was "important that the matter be handled expeditiously."
We agree with the Law Division that "[f]amily members do commit crimes against one another" that must be prosecuted. The Law Division found:

*614 [T]he communications and the actions that were a purpose to harass was the taking of that car, driving it off, coming back, yelling at her, leaving messages on the cell phone in a veryin a way that was quite upsetting and leaving her out in the woods like that, crying and upset, dropping all her stuff at the house, and just acting in a manner, I find beyond a reasonable doubt, was with the purpose to harass her in a communication that was likely to cause her annoyance and alarm in that regard. It was intended and did, in fact, did intrude on her privacy. It was disturbing and it [a]ffected her detrimentally.
While we acknowledge our limited scope of review, State v. Segars, 172 N.J. 481, 487-88, 799 A.2d 541 (2002); State v. Locurto, 157 N.J. 463, 471-75, 724 A.2d 234 (1999), we view the matter differently than the Law Division. We see the case as one which would not have been pursued but for the ongoing matrimonial dispute and one which may adversely affect an otherwise good long-term relationship between father and daughter, which need not have been put to the test at the suggestion of the mother's counsel. It is analogous in many respects to the prosecution of a de minimus infraction. See N.J.S.A. 2C:2-11.
The Supreme Court recently visited the concept of harassment in the context of a domestic violence case. In H.E.S. v. J.C.S., 175 N.J. 309, 327, 815 A.2d 405 (2003), the Supreme Court reminded us that the determination of whether there was a "purpose to harass" should be decided based on "common sense and experience."
We find no basis on which to uphold the conviction under subsection (a) based on a "purpose to harass" because defendant was trying to conduct a discussion with his unemancipated daughter about her finances and expenses when she decided to leave. The prosecution and conviction in this matter is not what was intended by the Legislature in adopting N.J.S.A. 2C:33-4(a). J.N.S. v. D.B.S., 302 N.J.Super. 525, 532, 695 A.2d 730 (App.Div.1997) (yelling vulgarities and obscenities and blocking car in driveway not a violation of subsection (a)). As we said in J.N.S. v. D.B.S., in the context of a claim of domestic violence arising under N.J.S.A. 2C:33-4, "neither the harassment statute nor the Prevention of Domestic Violence Act were intended to place trial judges in the role of super monitors over modern-day parenting." Ibid. This prosecution was an outgrowth of the same type of family dispute for which we have not permitted use of the harassment statute to uphold a restraining order. Here we do not permit it to uphold a petty disorderly persons conviction.
The judgment of conviction is reversed.
NOTES
[1] Judge Collester did not participate in the argument, but with the consent of the parties participated in the disposition of the appeal.
[2] The record reflects that one of the attorneys with whom the mother spoke and who had been involved in calling the police and filing the complaint was in the courtroom during trial. At argument before us there was no dispute that the matter was prosecuted by a private prosecutor retained by the complainant's mother. The mother testified that the attorney who prosecuted the matter became "my lawyer" upon the recommendation of one of her attorneys. Since that fact is not contested before us, we question the wisdom and propriety of permitting the matter to go forward in this type of case if the municipal prosecutor declined to handle it. See State v. Carlson, 344 N.J.Super. 521, 782 A.2d 950 (App.Div.2001), certif. denied, 171 N.J. 336, 793 A.2d 715 (2002). In any event, the record contains no consideration of the requirements necessary for the approval of a private prosecutor, see State v. Storm, 141 N.J. 245, 255-56, 661 A.2d 790 (1995), or the findings required by R. 7:8-7(b). All that was said on the record was that counsel "filed a letter ... in compliance with the Storm requirements." In the absence of an argument addressed to the issue, we do not vacate the conviction on that basis.