**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4858-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FIDEL HERNANDEZ,

    Defendant-Appellant.

_____

> Submitted January 21, 2021 – Decided March 3, 2021
>
> Before Judges Ostrer, Vernoia and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Municipal Appeal No. 13-18.
>
> Scott D. Finckenauer, attorney for appellant.
>
> Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from a May 29, 2019 disorderly persons conviction for simple assault, N.J.S.A. 2C:12-1(a), following a trial de novo in the Law Division. We remand for further proceedings.

Defendant's conviction stems from an altercation with his alleged victim, Elvera Bland, at a block party in Jersey City on August 20, 2016. Bland's sister Militinia,[1] was one of the party's organizers. Following the altercation, Bland was taken by ambulance to the Jersey City Medical Center for treatment of a bite wound she reportedly sustained when defendant bit her upper arm. Additionally, after the police were called to the scene, Officer Albert Bower issued a complaint against defendant for disorderly conduct, N.J.S.A. 2C:33-2.

Due to a transfer in venue from Jersey City, as well as a prosecutorial conflict arising out of East Newark, this case was tried in the Guttenberg Municipal Court.[2] The municipal judge considered the disorderly conduct charge filed by Officer Bower against defendant, as well as complaints for

---

[1] We use Militinia Bland's first name in this opinion for the convenience of the reader and to avoid confusion. No disrespect is intended in this regard.

[2] We have not been provided with any transcripts from proceedings which may have occurred prior to the assignment of this case to the Guttenberg Municipal Court.

A-4858-18

simple assault filed by Bland and defendant against each other. The judge also addressed the harassment charges filed against defendant by Militinia, and two other attendees of the block party, Bruce Edwards and Deborah Alston.[3] A private attorney prosecuted the complaints filed by Bland and Militinia against defendant and defended Bland against defendant's complaint. Defendant also appeared with private counsel.

Throughout the trial, several witnesses described the physical confrontation between Bland and defendant, and its aftermath. According to Officer Bower, he was dispatched to the scene of the block party based on a call that "a man . . . was being held down by neighbors after a dispute." Officer Bower stated that Bland reported "she had a verbal dispute with the alleged actor, which then turned into a confrontation, as she was, I believe, thrown on the floor and then bitten." Bland told the officer defendant was her attacker. Officer Bower was directed by Bland's neighbors to defendant's apartment, where he questioned defendant about the incident. According to the officer, defendant "appeared intoxicated" and looked "like he had just been in some sort of confrontation." The officer stated defendant "was red in the face" and

---

[3] Additional cross-complaints were filed by other block party attendees against one another but are not relevant to the instant appeal.

A-4858-18

"unable to respond to basic questions." Further, the officer observed defendant "smelled of alcoholic beverages." Referring to his incident report, Officer Bower noted defendant denied to the police that he had been drinking, and defendant claimed, "he was attacked by that bitch." Asked on redirect why only one party involved in the incident was charged by the police, Officer Bower answered, "[t]he aggressor was charged, I believe, that night." The officer further explained that before defendant was detained, a bystander, Bruce Edwards, as well as Bland, informed him defendant was the aggressor in the confrontation. Also, Officer Bower testified there was "[n]o doubt in [his] mind" defendant was visibly intoxicated before he was detained, but Bland did not appear to be intoxicated.

Bland testified that defendant's attack was "totally unprovoked" and that defendant "charged" at her, "like you would do in a football game. When somebody comes, and just tackles you." She explained:

> I stopped about 25 to 50 feet away from where [defendant] was. . . . I was standing there talking to the neighbor. I heard this loud noise with somebody saying, "fuck those Blands, . . . I'm taking them down." The crowd started laughing. And as I looked out of the corner of my eyes, I saw [defendant] running down toward me. He gets in front of me and stops. And that's when he charges me, and knocks me to the ground.

4

A-4858-18

It's at that point that the only thing I remember is . . . like a sharp bite on my arm. And I'm trying to pull it away. And I could just feel the skin being pulled off my arm. Then there's a melee. And I notice somebody is trying to pull me from under him.

And I see people that are holding him. And every time they grab him, I'm terrified because he keeps lunging back down, trying to get me while I'm still struggling to get off the ground.

Bland confirmed that during the attack, defendant "was banging [her] head against the ground." She further affirmed she was taken by ambulance to Jersey City Medical Center for treatment of the bleeding bite wound on her arm. She testified it "looked like a shark bite," adding, "you could see the whole impression of a mouth on my arm."

Militinia also testified at the hearing. She stated that as the party's organizers were shutting down the block party and cleaning up, defendant ran toward her sister and knocked her to the ground. She stated:

So [defendant]'s in the middle of the street. He runs to the sidewalk, which would be across the street. Then he pivots, and I see him take off. . . . And then I see him run into someone, and they fall.

As Militinia moved toward the area where the brawl ensued, she realized "[t]here was nothing [my sister] could do. She was doing nothing. She was being beaten." Militinia attested that she and several neighbors tried to

intervene, and she saw her sister's arm was bleeding. She also recalled seeing defendant spitting and shouting, "I'm going to kill the bitch." Using a racial epithet, he said, "we hate you mother f—kers" and they "should die."

Edwards testified that on the day of the block party, defendant was standing in a crowd, yelling degrading terms and making "disparaging remarks." He saw defendant run over to Bland and knock her over as the crowd cheered. Edwards attested:

> As I was walking to him, [defendant] flopped on top of [Bland].
>
> . . . .
>
> And . . . then . . . there was an intermingling of them. And I pulled him off. I came down, and pulled him off. And that's when the rest of the crowd came. And he got up cursing, and – and calling all kind of names.

Edwards confirmed Bland did not hit defendant or hurt defendant in any way.

Alston testified defendant was drinking throughout the day. She saw defendant "knock [Bland] to the ground and jump on top of her and attack her, . . . swinging and punching her." She stated Bland did not address defendant in any way or call out to him before the attack.

6

Defendant described the incident differently when he testified. He admitted he was drunk at the block party but denied using the racial slurs mentioned by other witnesses. He stated:

> As I'm heading back towards my area, I come in contact with [Bland] who comes out of nowhere. The next thing that I know she says something to me, she grabs me by the T-shirt as she's making this small wailing sound.
>
> . . . .
>
> So she knocks me to the ground and starts clawing my face . . . . So, I have all the pictures of the evidence of my wounds that I sustained that day at the hands of [Bland]. I know that the narrative is where the male attacks the female, and we have heard three accounts of the same thing. We have heard that I ran to her and tackled her down. We have heard . . . I knocked her down, and was beating her, yet I – I know that didn't happen.

Defendant testified he tried to push Bland away and felt "her nails as she was just tearing [his] skin," so the "only thing" he "could do was bite her." He stated Bland was led away while he was "left on the ground with blood coming out of [his] eye." Defendant attested he retreated to his house, followed by several people, to clean up and care for his wounds. Shortly thereafter, the police arrived, asked him what happened, and arrested him.

7

Defendant's roommate, Glenn Trickel, testified that Militinia was upset there was a large crowd by their stand during the party. Regarding the confrontation between defendant and Bland, he recalled:

> . . . I'm hearing eeeeh. I look over, and I see [defendant] on the ground on his back, and I go over there immediately. And his eye is covered in blood, and there's blood coming down the side of his face, and I went, oh, my God. What the hell happened?

The municipal judge found Bland not guilty of the simple assault charge filed by defendant; she also found defendant not guilty of the harassment charges filed by Edwards, Alston, and Militinia, and not guilty of the disorderly conduct charge lodged by Officer Bower. However, on the remaining simple assault charge filed by Bland against defendant, the judge concluded:

> I find the defendant guilty of simple assault. I find that he knocked . . . Bland down. She's 63 years old. By knocking her to the ground, I find that he, in fact, did bite [Bland], causing the skin to break and causing an injury to [Bland], when not provoked by [Bland]. Therefore, I find the defendant is guilty of simple assault.

On June 14, 2018, defendant appealed from his conviction to the Law Division. The Law Division judge remanded the case to the municipal judge, requesting that she supplement the trial record with her credibility findings on the trial witnesses. On October 30, 2018, the municipal judge supplemented

A-4858-18

the record to include her credibility findings, and credited Militinia's testimony that defendant ran towards Bland before "knocking her to the ground, getting on top of her, punching her, and biting her."  The judge also concluded several block party attendees held defendant down after he was pulled off Bland.  Further, the judge believed Bland's testimony that defendant ran towards her, knocked her to the ground, that she felt her skin pull from her arm, and needed medical treatment for the bite.  The judge also found the testimony of Officer Bower, Alston and Edwards credible.

On the other hand, the municipal judge found that although defendant testified truthfully about serving wine at the block party and that he had too much to drink that day, he was not truthful when he denied using profanity during the altercation and when he testified that Bland instigated the assault.

Once the municipal judge amplified her findings, defendant's appeal proceeded in the Law Division.  Oral argument was held in Superior Court on February 28, 2019.  Neither Bland's nor defendant's private counsel appeared at this proceeding; instead, an assistant prosecutor from the Hudson County Prosecutor's office appeared for the State and defendant appeared pro se.  Defendant argued there was a lack of evidence to support his simple assault conviction.

On May 29, 2019, following his de novo review of the matter, the Law Division judge found defendant guilty of simple assault. The judge determined that defendant was not the victim of a "vicious and unprovoked attack," but instead, the State proved beyond a reasonable doubt defendant assaulted Bland.[4]

On the instant appeal, defendant raises the following arguments:

POINT ONE

THE LOWER COURTS FAILED TO FOLLOW RULE 7:8-7(b) IN PERMITTING ELVERA BLAND'S DEFENSE ATTORNEY TO PROSECUTE HER SIMPLE ASSAULT COMPLAINT AGAINST THE DEFENDANT. (Not raised below).

POINT TWO

THE LAW DIVISION FAILED TO CONCLUDE THAT THE STATE PROVED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT DID NOT ACT IN SELF-DEFENSE, OR, ALTERNATIVELY, IT ERRED IN CONCLUDING THAT THE STATE PROVED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT HAD NOT ACTED IN SELF-DEFENSE.

As a threshold matter, we recognize a Law Division judge reviews a municipal court appeal de novo on the record. R. 3:23-8(a)(2). The trial court

_____

[4] We do not address the Law Division's other findings because they are unrelated to the issues raised on appeal.

must make independent "findings of fact and conclusions of law but defers to the municipal court's credibility findings." State v. Robertson, 228 N.J. 138, 147 (2017). We review a de novo conviction by the Law Division following a municipal court appeal "exceedingly narrow[ly]." State v. Locurto, 157 N.J. 463, 470 (1999). In our review of the Law Division's decision on a municipal appeal, "[w]e review the action of the Law Division and not that of the municipal court." State v. Adubato, 420 N.J. Super. 167, 175-76 (App. Div. 2011) (internal quotation marks and citations omitted). Unlike the Law Division, we do not independently assess the evidence. Locurto, 157 N.J. at 471-72. Instead, we consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting Locurto, 157 N.J. at 471).

The rule of deference is more compelling here, where the municipal and Law Division judges made concurrent findings. Locurto, 157 N.J. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citation omitted). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any

special deference." <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Guided by these principles, we would have little difficulty affirming defendant's conviction, were it not for the <u>Rule</u> 7:8-7 argument he raises in Point I. However, we are constrained to remand this matter to the Law Division to determine whether the dictates of <u>Rule</u> 7:8-7 were followed. If there are disputed facts regarding compliance with the rule, an evidentiary hearing should be held. In the event the remand court finds there was compliance with <u>Rule</u> 7:8-7, defendant's conviction shall be affirmed; if not, contrary to the State's position, defendant's conviction must be vacated in favor of a new trial with the appropriate prosecuting attorney. Thus, to the extent we address defendant's argument in Point II, we are mindful our comments are of no consequence should the remand result in a vacatur of defendant's conviction.

In the seminal case of <u>State v. Storm</u>, our Supreme Court held that allowing a private prosecution in the municipal court facilitates access to the courts. 141 N.J. 245, 251 (1995). Nevertheless, the <u>Storm</u> Court urged the Committee on Municipal Courts to provide guidelines for when a judge should permit the appointment of private prosecutors, and what factors should be considered. <u>Id.</u> at 255. The <u>Storm</u> Court also concluded that if the municipal

prosecutor insists on prosecuting a case, then that decision should be final. Ibid. However, "[i]n all other cases, the private attorney should disclose in a written certification all facts that foreseeably may affect the fairness of the proceedings." Ibid.

In response, Rule 7:8-7(b) was adopted, which states:

> The municipal prosecutor, municipal attorney, Attorney General, county prosecutor, or county counsel, as the case may be, may appear in any municipal court in any action on behalf of the State and conduct the prosecution either on the court's request or on the request of the respective public official. The court may also, in its discretion and in the interest of justice, direct the municipal prosecutor to represent the State. The court may permit an attorney to appear as a private prosecutor to represent the State in cases involving cross-complaints. Such private prosecutors may be permitted to appear on behalf of the State only if the court has first reviewed the private prosecutor's motion to so appear and an accompanying certification submitted on a form approved by the Administrative Director of the Courts. The court may grant the private prosecutor's application to appear if it is satisfied that a potential for conflict exists for the municipal prosecutor due to the nature of the charges set forth in the cross-complaints. The court shall place such a finding on the record.
>
> [Emphasis added.]

The failure of a municipal court to enforce the requirements of Rule 7:8-7(b) renders a defendant's conviction void ab initio. State v. Myerowitz, 439

N.J. Super. 341, 359 (App. Div. 2015). "A plain reading of R[ule] 7:8-7(b) does not permit an interpretation that its application is discretionary. The rule does not state that a private prosecutor 'may' submit such a certification or that the municipal judge 'may' review it." State v. Valentine, 374 N.J. Super. 292, 297 (App. Div. 2005).

A private attorney may be permitted to prosecute only if the court reviews the certification, makes a ruling, and grants the motion "for good cause shown." Ibid. As we have noted:

> the first step under Rule 7:8-7(b) requires the municipal court judge to determine whether the parties have filed cross complaints against each other. In such a scenario, the municipal prosecutor is placed in an untenable situation because each party is a defendant in one case and a complaining witness in the other.
>
> . . . .
>
> In the absence of actual cross-complaints that create an insurmountable conflict of interest for the prosecutor, there are no legal grounds for the municipal court to permit a private attorney to represent the State.
>
> . . . .
>
> The second step under Rule 7:8-7(b) requires the municipal court to review the private attorney's motion to assume the role of prosecutor. This motion must be accompanied by a "certification submitted on a form

> approved by the Administrative Director of the Courts."
>
> [Myerowitz, 439 N.J. Super. at 356 (quoting R. 7:8-7(b)).]

"The overarching argument against private prosecutors is the risk they pose to a defendant's right to a fair trial." Storm, 141 N.J. at 252 (citing State v. Kinder, 701 F.Supp. 486, 489 (D.N.J. 1988)). Prosecutors, who represent the State, and private attorneys, who represent people, have different responsibilities that may often conflict. Compare RPC 1.2 with RPC 3.8. Problems arise when a private prosecutor has responsibilities both to a complaining witness and to the State. Storm, 141 N.J. at 252. The prosecutor, like the judge, must be impartial. Id. at 254. Ultimately, however, "[i]n adopting R[ule] 7:8-7(b), the Court lodged the obligation to insure the impartiality of private prosecutions, in the first instance, with municipal judges." Valentine, 374 N.J. Super. at 295.

Although we were provided with several transcripts in this matter, the earliest transcript in the record is dated November 30, 2016, the date the parties first appeared in Guttenberg Municipal Court, following the transfers from two other municipal courts. Thus, it is unclear whether any municipal court involved in this matter before November 30, 2016 ensured that private counsel

15

filed a motion to assume the role of prosecutor and provided the required certification under the rule. We also have no indication any municipal court granted Bland's attorney leave to prosecute the case against defendant. Accordingly, this matter must be remanded for a hearing on these issues.

Regarding Point II, if the remand judge determines the requirements of Rule 7:8-7(b) were fulfilled, we are satisfied there is substantial credible evidence in the record to support the Law Division judge's findings that defendant was not acting in self-defense. Pursuant to N.J.S.A. 2C:3-4(a), the use of force is justifiable for the protection of a person if "the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." There must be an "actual belief in the necessity of using force" and such belief must be reasonable. State v. Urbina, 221 N.J. 509, 525 (2015) (quoting State v. Kelly, 97 N.J. 178, 198-99 (1984)).

Here, the Law Division judge found defendant was not defending himself from a "vicious and unprovoked attack." In conducting his de novo review and giving "due deference to [the municipal judge's] credibility findings," the Law Division judge determined:

> Four witnesses testified that they observed [defendant] yell profanities, charge across the street, and knock

someone down. Three witnesses testified that the person [defendant] knocked down was [Bland]. Four witnesses testified that they saw [defendant] punching Bland on the ground. Four witnesses testified that they saw blood coming from [Bland]'s arm. Bland testified that [defendant] bit her in the arm, and that she sought medical treatment as a result of her injury. The evidence clearly demonstrates that [defendant] was not the victim of a "vicious and unprovoked attack." . . . Rather, the evidence establishes beyond a reasonable doubt that appellant was guilty of simple assault on [Bland].

There is ample evidence in the record to support the judge's finding that defendant was the aggressor in the incident and that he did not act in self-defense when he bit Bland. We perceive no basis to disturb the Law Division judge's findings.

To the extent we have not addressed any of defendant's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17