870 A.2d 249

IN THE MATTER OF THE GRAND JURY APPEARANCE
REQUEST BY LARRY S. LOIGMAN, ESQ.

Argued February 15, 2005—Decided April 11, 2005.

*Boris Moczula,* Assistant Attorney General, argued the cause for appellant, Attorney General of New Jersey (*Peter C. Harvey,* Attorney General, attorney; *H. John Witman III,* Deputy Attorney General, of counsel and on the brief).

*Larry S. Loigman* argued the cause respondent, *pro se.*

*Robert D. Bernardi,* Burlington County Prosecutor, argued the cause for *amicus curiae,* County Prosecutors Association of New Jersey (*Thomas F. Kelaher,* Ocean County Prosecutor, President, attorney; *Mary R. Juliano,* Assistant Monmouth County Prosecutor, on the brief).

ALBIN, Justice.

In this case, Larry S. Loigman, a Monmouth County lawyer, professes to have information bearing on the legality of a state-run program intended to deter underage drinking. He has not reported any allegation of criminal wrongdoing to a state or federal law enforcement agency in New Jersey. Instead, he argues that he has a common law right to present his claims directly to a grand jury for investigation. The Monmouth County Assignment Judge denied Loigman's application for direct access to the grand jury. The Appellate Division ruled in Loigman's favor, holding that a citizen has a right to present his claims to the grand jury, provided that the Assignment Judge determines that the allegation and supporting information merit grand jury consideration. We granted certification and now reverse.

I.

On February 18, 2002, Larry S. Loigman, Esq., forwarded a letter to the Monmouth County Grand Jury stating that he had "detailed information" regarding "financial irregularities" in a

federally funded program and offered to appear along with an unnamed client to address the issue before the Grand Jury. Loigman wrote:

> Last year, I was advised by a client of certain financial irregularities in the administration of the "Cops in Shops" program in Middletown Township. My review of available records confirmed the existence of such irregularities. ("Cops in Shops" is a federally-funded project which attempts to reduce the problem of underage alcohol consumption, by stationing plainclothes police officers outside licensed establishments.)
>
> Since the "Cops in Shops" money is funneled through the Division of Alcoholic Beverage Control, I contacted the Director of the ABC and requested that an investigation be conducted. However, the ABC has refused to investigate....
>
> If the Grand Jury is interested in addressing this situation, both my client and I would be available at your convenience to provide detailed information.

Six weeks later, having received no response to his letter, Loigman wrote again to the members of the grand jury, inquiring whether they "intend[ed] to address this situation or, as with so much of the public official corruption in this State, it will remain uninvestigated." Monmouth County Assignment Judge Lawrence M. Lawson, who was copied on those letters, replied to Loigman. Judge Lawson stated that it was "inappropriate for [Loigman] to be communicating with the Grand Jury" and suggested that he "direct [his] concerns" to the Monmouth County Prosecutor or the Attorney General, who would then determine whether to present the matter to a county or State grand jury.

A year later, Loigman still had not filed a report with a state or federal law enforcement agency concerning "Cops in Shops." Nevertheless, in March 2003, Loigman wrote to Judge Lawson requesting permission to appear before the grand jury with regard to that matter. Judge Lawson responded that his position had not changed and again advised Loigman to contact the Monmouth County Prosecutor's Office or Attorney General's Office. Judge Lawson noted that although he had supervisory control over the grand jury, he did not possess law enforcement powers and could not undertake the role of "sifting through countless claims by citizens who believe that illegal conduct is taking place." Judge Lawson deferred to the prosecutor whose statutory authority, experience, and investigative resources placed

him in the best position to determine whether any evidence of criminality warranted a presentation to a grand jury.

Loigman then filed a verified petition requesting that Judge Lawson affirm that Loigman had a "right, duty and obligation to inform the Grand Jury about the occurrence of wrongdoing within its jurisdiction...." Loigman also sought an order requiring the grand jury clerk to place before the grand jury his earlier letters and to issue a subpoena for Loigman's appearance before that body. Judge Lawson denied the application because there was "simply no case or law" giving Loigman "the authority to send information to the Grand Jury." Judge Lawson declined to promulgate a rule that would "open the floodgates" to countless requests to appear before a grand jury.

The Appellate Division reversed and declared that citizens have a right of direct access to the grand jury, subject to judicial screening. *In re Grand Jury Appearance Request by Larry S. Loigman, Esq.,* 370 *N.J.Super.* 406, 407–08, 413, 851 *A.2d* 671 (App.Div.2004). The panel noted that no New Jersey court had squarely dealt with this issue before, and relied in large part on the rulings of other jurisdictions that allowed citizen access to the grand jury. *See id.* at 409–12, 851 *A.2d* 671. With reference to this state's case law, the panel emphasized the important role the grand jury has played as an independent investigative body possessed of " 'extraordinary powers' " and responsibility to " 'direct[ ] its own efforts.' " *Id.* at 411, 851 *A.2d* 671 (quoting *State v. Doliner,* 96 *N.J.* 236, 249, 475 *A.2d* 552 (1984)). In that light, the panel found "untenable [the State's] contention that the grand jury should be prevented from receiving communications from private individuals who seek to bring to its attention wrongful activity within its jurisdiction." *Id.* at 411–12, 851 *A.2d* 671. The panel concluded that

> any citizen submission directly to the grand jury should be made available to the [assignment] judge by the grand jury clerk when it is received. The judge may then determine whether he or she should instruct the jury on the matter. In this case, since the communication has already been intercepted, the Assignment Judge shall submit it to the grand jury with such instructions as he deems appropriate.

[*Id.* at 413, 851 *A.*2d 671.]

We granted the State's petition for certification, *In re Grand Jury Appearance Request by Larry S. Loigman, Esq.*, 182 *N.J.* 140, 861 *A.*2d 845 (2004), and now reverse.

## II.

We must decide an issue of first impression in New Jersey: whether a person has a right to present directly to the grand jury an allegation or evidence of a crime. No statute, court rule, or court opinion in this state—other than the decision below—has recognized such a right. If a citizen's right of grand jury access exists, it must be found in this state's common law; if it has a place in our modern-day criminal justice system, it should advance an important public interest. We, therefore, begin our discussion with an analysis of the grand jury's role in our system of justice.

The New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense, unless on the . . . indictment of a grand jury. . . ." *N.J. Const.* art. I, ¶ 8. That fundamental protection in the charging process has been embedded in our law for more than two centuries and has its roots in English history. *See State v. Rockafellow*, 6 *N.J.L.* 332, 339 (Sup.Ct.1796) ("Without a legal presentment, no man can, under our administration of the laws, be tried for any heinous offence . . . ."), *overruled on other grounds, In re Public Highway*, 22 *N.J.L.* 293, 299 (Sup.Ct.1849); *see also State v. Hogan*, 144 *N.J.* 216, 228, 676 *A.*2d 533 (1996) (noting that grand jury's responsibility "to protect[ ] the innocent from unfounded prosecution" has "roots in English history" (internal quotations omitted)). The grand jury's duty is not only to bring to trial those who are probably guilty, but also to clear the innocent of baseless charges. *Hogan, supra,* 144 *N.J.* at 228, 676 *A.*2d 533. The grand jury has fulfilled its "historic purpose [by] standing between the defendant and the power of the State, protecting the defendant from unfounded prosecutions." *State v. Fortin,* 178 *N.J.* 540, 638, 843

*A.*2d 974 (2004). It remains a bulwark against hasty and ill-conceived "prosecutions and continues to lend legitimacy to our system of justice by infusing it with a democratic ethos." *Ibid.* The indictment requirement of Article 1, Paragraph 8, is a constitutional protection that enhances the integrity of the charging process. It does not confer an unbridled right of access, allowing any person to make an accusation or present evidence to the grand jury.

██ Before the advent of the professional prosecutor and our present-day Constitution, private prosecutions before a grand jury may have been acceptable, but for more than a hundred years no such practice has existed. *See State v. Winne,* 12 *N.J.* 152, 164–66, 96 *A.*2d 63 (1953); *McBlain v. Edgar,* 65 *N.J.L.* 634, 636, 48 *A.* 600 (E. & A.1901). In early English common law,

> it was the duty of everyone against whose person or property a crime had been committed to prosecute the guilty one to conviction. He was, in the discharge of this duty, often compelled to employ counsel, procure the indictment to be drawn and laid before the grand jury, with the evidence in its support, and if found, to see that it was properly prosecuted before the jury of trials.
>
> Such a practice is not observed here. We have public prosecutors in every county.
>
> [*McBlain, supra,* 65 *N.J.L.* at 636, 48 *A.* 600 (citations omitted).]

In New Jersey, "public prosecutors superseded private prosecutors long before the Revolution," and by 1822 the name of a prosecutor was listed in every county. *Winne, supra,* 12 *N.J.* at 165, 96 *A.*2d 63. Our courts have not recognized private prosecutions for serious criminal charges since at least 1901.[1] *McBlain, supra,* 65 *N.J.L.* at 636, 48 *A.* 600. In the modern era, it has been the responsibility of the public prosecutor to investigate and prosecute serious crimes, and it has been the role of the victim or concerned citizen to report knowledge of criminal activities to the proper law enforcement authorities. *Shim v. Kikkoman Int'l*

---

[1] Private prosecutions in municipal court are a permissible, *R.* 7:8–7(b), but not favored, practice. *See State v. Storm,* 141 *N.J.* 245, 252–54, 661 *A.*2d 790 (1995); *State v. Ward,* 303 *N.J.Super.* 47, 52, 696 *A.*2d 48 (App.Div.1997).

*Corp.*, 509 *F.Supp.* 736, 739–40 (D.N.J.), *aff'd*, 673 *F.*2d 1304 (3d Cir.1981) (citing *McBlain, supra* ).

We cannot agree with the conclusion of the Appellate Division in this case that, in recent times, New Jersey courts "have treated a citizen's right to directly ask a grand jury to investigate a matter as unremarkable." *Loigman, supra*, 370 *N.J.Super.* at 409, 851 *A.*2d 671. The cases cited by the Appellate Division, *O'Regan v. Schermerhorn*, 25 *N.J. Misc.* 1, 50 *A.*2d 10 (Sup.Ct.1946), and *In re Monmouth County Grand Jury*, 24 *N.J.* 318, 131 *A.*2d 751 (1957), do not support that proposition.

In *O'Regan, supra*, a libel case against a grand jury brought by two former prosecutors, the court discoursed generally on the grand jury's authority. 25 *N.J. Misc.* at 5–6, 23, 50 *A.*2d 10. The court noted that the grand jury was not required to have a formal charge before it to begin an inquiry, but could "of its own initiative investigate and diligently inquire into all alleged offenses against the criminal law regardless of how the information on which it acts is brought to its attention." *Id.* at 23, 50 *A.*2d 10. That language addressing the expansive powers of the grand jury cannot be read to confer a *right* of grand jury access to private persons seeking to press a case or make a charge.

In *Monmouth County Grand Jury, supra*, a grand jury returned two presentments, one of which concerned the sale of obscene material in Monmouth County. 24 *N.J.* at 320, 131 *A.*2d 751. In the course of deciding whether the Assignment Judge properly quashed the presentments, the Court noted that "complaints were received from a citizens' group" by the grand jury. *Id.* at 321, 131 *A.*2d 751. The court did not identify how those complaints made their way to the grand jury. We do know, however, that the prosecutor submitted evidence to the grand jury. *Ibid.* The Court never held—not even obliquely—that a private citizens' group could directly present its complaints to the grand jury.

Even if we were to find support for direct grand jury access by private citizens in our distant common law, we still would have to

determine whether such a practice serves a legitimate purpose in our contemporary criminal justice system. The dead hand of the past should not perpetuate a rule whose rationale no longer pertains to present-day circumstances. We therefore must examine whether our current statutes and court rules governing grand jury practice are inconsistent with the principle of access now resurrected by the Appellate Division.

## III.

A grand jury is comprised of "not more than" twenty-three citizens from the geographical locale over which it has jurisdiction. *N.J.S.A.* 2B:21–2(a); *N.J.S.A.* 2B:22–2; *N.J.S.A.* 2B:22–3; *R.* 3:6–1. At any given time, there is at least one county grand jury in operation in every county, *N.J.S.A.* 2B:21–1, and at least one State grand jury in operation with statewide jurisdiction. *N.J.S.A.* 2B:22–1(a). A typical county grand juror serves one day a week for a period of sixteen weeks. New Jersey Judiciary, *A Walk through the Judicial Process: Welcome to the New Jersey Court System,* *at* http://www.judiciary.state.nj.us/process.htm (2001). Generally, the prosecutor decides whether a matter should be investigated by the grand jury, and the grand jury decides whether to return an indictment. *See N.J.S.A.* 2A:158–5; *R.* 3:25–1(a); *Hogan, supra,* 144 *N.J.* at 227–28, 235–36, 676 *A.2d* 533; *Doliner, supra,* 96 *N.J.* at 249–50, 475 *A.2d* 552.

The grand jury is a judicial, investigative body, serving a judicial function; it is an arm of the court, not a law enforcement agency or an alter ego of the prosecutor's office. *State v. Haines,* 18 *N.J.* 550, 557, 115 *A.2d* 24 (1955); *see also Hogan, supra,* 144 *N.J.* at 236, 676 *A.2d* 533. The broad investigative authority of the grand jury allows it " 'to determine whether a crime has been committed and whether criminal investigations should be instituted against any person.' " *In re Application for Disclosure of Grand Jury Testimony,* 124 *N.J.* 443, 449, 591 *A.2d* 614 (1991) (quoting *United States v. Calandra,* 414 *U.S.* 338, 343–44, 94 *S.Ct.* 613, 617–18, 38 *L.Ed.2d* 561, 569 (1974)). Among the grand jury's

"extraordinary powers," *Doliner, supra*, 96 *N.J.* at 249, 475 *A.*2d 552, is the power to "investigate upon its own suggestion." *In re Addonizio*, 53 *N.J.* 107, 124, 248 *A.*2d 531 (1968). An anonymous charge, even a rumor, may be investigated by the grand jury to quell public concern that the criminal laws of the state have been violated. *Id.* at 126, 248 *A.*2d 531. The grand jury also can direct the prosecutor to subpoena witnesses and evidence. *Doliner, supra*, 96 *N.J.* at 249, 475 *A.*2d 552.

To say that the grand jury has far-reaching powers does not imply that any person with a grievance, an allegation, or even knowledge of criminal conduct can bypass the appropriate channels for reporting criminal activity and go before that body. Today, the state's twenty-one county prosecutors and the Attorney General are exclusively charged with prosecuting "[t]he criminal business of the State . . . ." *N.J.S.A.* 2A:158–4. Both the county prosecutors and the Attorney General are invested with the responsibility of seeking "the detection, arrest, *indictment* and conviction of offenders against the laws." *N.J.S.A.* 2A:158–5 (emphasis added); *see also State v. Downie*, 229 *N.J.Super.* 207, 209 n. 1, 550 *A.*2d 1313 (App.Div.1988) ("*N.J.S.A.* 2A:158–4 and 5 give the Attorney General and county prosecutors plenary jurisdiction to prosecute all criminal matters in this State."), *aff'd,* 117 *N.J.* 450, 469, 569 *A.*2d 242, *cert. denied,* 498 *U.S.* 819, 111 *S.Ct.* 63, 112 *L.Ed.*2d 38 (1990).

The Attorney General (or his designee) is empowered to present cases to the State grand jury. *N.J.S.A.* 2B:22–6. Likewise, the county prosecutors and their assistants have similar authority to present cases to county grand juries. *N.J.S.A.* 2A:158–5 ("Each [county] prosecutor shall be vested with the same powers and be subject to the same penalties, within his county, as the attorney general shall by law be vested with or subject to . . . ."); *N.J.S.A.* 2A:158–18 ("In any county any of the assistant prosecutors of such county may attend the sessions of the grand jury of such county, and render therein any service or perform any duty that might be rendered or performed by the prosecutor of such county if he

were present."). Those statutes make no provision for citizen presentations to the grand jury.

Additionally, our court rules do not contemplate private citizens prosecuting or presenting matters directly to the grand jury. *Rule* 3:6-6(a) states that "[n]o person other than the jurors, the prosecuting attorney, the clerk of the grand jury, the witness under examination, interpreters when needed and, for the purpose of recording the proceedings, a stenographer or operator of a recording device may be present while the grand jury is in session." The rule strongly suggests that a private citizen is permitted to be in the grand jury room only while under examination by the prosecutor.

In addition to the county prosecutors and the Attorney General, there are many other law enforcement agencies throughout this state charged with investigating criminal complaints. Most municipalities have their own police departments. *See N.J.S.A.* 40A:14–118. The United States Attorney for the District of New Jersey has jurisdiction to prosecute violations of federal law within this state. 28 *U.S.C.A.* § 547(1). In addition, the State Commission of Investigation—an agency without law enforcement authority—has broad powers to investigate "[t]he conduct of public officers and public employees, and of officers and employees of public corporations and authorities." *N.J.S.A.* 52:9M-2(b). The Commission is required to refer "any information or evidence of a reasonable possibility of criminal wrongdoing" to the Attorney General. *N.J.S.A.* 52:9M-8(a).[2]

---

[2] The State Commission of Investigation does not file or prosecute criminal charges but rather investigates organized crime, public and corporate corruption, and other public safety matters. *In re Zicarelli*, 55 *N.J.* 249, 258–59, 263–64, 261 *A.2d* 129 (1970), *aff'd sub nom. Zicarelli v. New Jersey State Comm'n of Investigation*, 406 *U.S.* 472, 481, 92 *S.Ct.* 1670, 1676, 32 *L.Ed.*2d 234, 242 (1972). Periodically, the Commission will release its investigative findings and conclusions to the public in a report. *N.J.S.A.* 52:9M-11. *See generally* New Jersey State Commission of Investigation, *Frequently Asked Questions, at* http://www.state.nj.us/sci/faq.shtm (last visited Mar. 28, 2005).

The prosecutors' offices in this state have hundreds of experienced and well-trained attorneys, many of whom have made law enforcement their career. We have no reason to believe that they cannot be trusted to bring before the grand jury meritorious complaints of potential criminal conduct and to weed out frivolous allegations unworthy of presentation. That is a function our court rules already entrust to them. Moreover, the law enforcement and investigative agencies mentioned have overlapping jurisdiction, which increases the likelihood that one or more of those agencies will have an interest in pursuing a legitimate claim of wrongdoing.

When a complaint alleging an indictable offense is filed in municipal or superior court, our rules require that the complaint and all related investigative reports be forwarded to the prosecutor for his review. *R.* 3:2–1. The prosecutor then determines whether the charges merit presentation to the grand jury or, alternatively, outright dismissal or downgrade to the municipal court. In the case of a dismissal, the prosecutor must give the basis for his decision to the Assignment Judge. *R.* 3:25–1(a). That procedure provides for transparency and some manner of judicial oversight.

Unlike private citizens, prosecutors are guided and governed by the Rules of Professional Conduct and our case law to ensure fairness in the process. For example, prosecutors are forbidden from "prosecuting a charge that the prosecutor knows is not supported by probable cause." *RPC* 3.8(a). They must present exculpatory evidence and may not mislead the grand jury by allowing the telling of a " 'half-truth' " or "a distorted version of the facts." *Hogan, supra,* 144 *N.J.* at 236, 676 *A.*2d 533. The prosecutor's "primary duty" is "to see that justice is done...." *State v. Frost,* 158 *N.J.* 76, 83, 727 *A.*2d 1 (1999) (quotations omitted). A prosecutor is enjoined from using "improper methods calculated to produce a wrongful conviction...." *Ibid.* (quotations omitted). Those principles of fairness are particularly important in a grand jury setting in which the prosecutor questions wit-

nesses, introduces evidence, and explains the law to the jurors without a judge or defense attorney in attendance.

Those constraints do not apply to and could not easily be imposed on private citizens, who generally have little comprehension of the highly technical procedures that are in place to guarantee the accused his right to a fair grand jury presentation. In addition, giving private persons the right of direct access to the grand jury would be fraught with abuse. Permitting prosecutorial bypass might encourage some persons not to bring pertinent information promptly to the appropriate law enforcement authorities in the hope of gaining direct contact with the grand jury. In some cases, a private person might be bent on pursuing an ill-motive or vindictive agenda. *See, e.g., People v. Parker*, 374 *Ill.* 524, 30 *N.E.*2d 11, 14 (1940) (explaining that defendant's letters sent to grand jury "are replete with [malignant] accusations against private citizens and public officials and are, in all probability, the result of personal enmity"), *cert. denied,* 313 *U.S.* 560, 61 *S.Ct.* 836, 85 *L.Ed.* 1520 (1941). For instance, political candidates, on the eve of an election, might charge their opponents with fraud or some other nefarious activity and request admission to the grand jury.[3]

In the present case, we do not suggest any improper purpose on the part of Loigman, but we note that several law enforcement organizations had putative jurisdiction over his claims—the United States Attorney for the District of New Jersey, the state Attorney General, and the Monmouth County Prosecutor. The claims, if legitimate, also might have been of interest to the State Commission of Investigation. Based on the record before us, Loigman never contacted any of those agencies. Nor does he allege that those agencies would have been unfair or incompetent in reviewing his allegations and evidence. Having failed to exhaust those

---

[3] This point was made by the Attorney General at oral argument before the Court.

available resources, Loigman has not demonstrated a need for direct grand jury access.

We add, however, that allowing grand jury access to a private citizen after a prosecutor has thoroughly reviewed his claims would be just as troublesome. Prosecutors routinely screen and investigate criminal complaints to determine whether there is probable cause to support the return of an indictment. Prosecutors are ethically bound not to seek an indictment in the absence of probable cause. RPC 3.8(a). The records of the Administrative Office of the Courts indicate that, each year, thousands of cases are dismissed or downgraded to municipal court without a grand jury presentation. The system envisioned by Loigman would allow dissatisfied parties to seek permission from the Assignment Judge to present their cases to the grand jury.

By way of illustration, a private citizen whose aggravated assault complaint is downgraded to simple assault by the prosecutor might request to appear before the grand jury to present the indictable offense. If the Assignment Judge permitted grand jury access in such a case, what role would the prosecutor play, the very same prosecutor whose review found no probable cause for an indictment? What role could he play consistent with the Rules of Professional Conduct? Who would instruct the jury on the law and ensure that the private citizen complied with the dictates of our rules and case law? Those questions underscore the many problems that would arise if private persons were granted grand jury access.

Moreover, before granting access, the Assignment Judge would be obligated to assess the merits of the complaint, performing the same review process of a front-line prosecutor. The regime suggested by the Appellate Division would require an intolerable level of intrusion by the judiciary into an executive function—the exercise of prosecutorial discretion in deciding *not* to pursue an investigation or press a charge. *See, e.g., State v. Hermann,* 80 *N.J.* 122, 127, 402 *A.*2d 236 (1979); *State v. LeVien,* 44 *N.J.* 323, 326–27, 209 *A.*2d 97 (1965); *Winne, supra,* 12 *N.J.* at 172–73, 96

*A*.2d 63. Such an erosion of the prosecutor's screening authority would be disruptive of the orderly and fair disposition of cases and increase the likelihood that wrongful indictments will be returned.

We are not persuaded by out-of-state authority permitting grand jury access, some of which was relied on by the Appellate Division. Some states confer the right of grand jury access by statute [4] and others through their common law.[5] We note that a

---

[4] *See, e.g., Colo.Rev.Stat.* § 16–5–204(4)(*l*) ("Any person may approach the prosecuting attorney or the grand jury and request . . . to appear before a grand jury. . . . [T]he court may permit the person to testify or appear before the grand jury, if the court finds that such testimony or appearance would serve the interests of justice."); *Me.Rev.Stat. Ann.* tit. 15, § 1256 ("Evidence relating to offenses cognizable by the court may be offered to the grand jury by the Attorney General, the district attorney, the assistant district attorney and, at the discretion of the presiding justice, by such other persons as said presiding justice may permit."); *Neb.Rev.Stat.* § 29–1410.01 ("Any person may approach the prosecuting attorney or the grand jury and request . . . to appear before a grand jury. . . . [T]he court may permit the person to testify or appear before the grand jury if the court finds that such testimony or appearance would serve the interests of justice."); *N.C. Gen.Stat.* § 15A–626(d) ("Any person not called as a witness who desires to testify before the grand jury concerning a criminal matter . . . must apply to the district attorney or to a superior court judge. The judge or the district attorney in his discretion may call the witness to appear before the grand jury."); *Tenn.Code Ann.* § 40–12–104(a) ("Any person having knowledge or proof of the commission of a public offense triable or indictable in the county may testify before the grand jury."); *Tex.Crim. Proc.Code Ann.* § 20.09 ("The grand jury shall inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person.").

[5] *See, e.g., King v. Second Nat'l Bank & Trust Co.,* 234 Ala. 106, 173 So. 498, 499 (1937) ("Public policy demands that the citizen, without hazard to himself, may freely bring before the grand jury the fact that a crime has been committed, request an investigation, and furnish such information as he has in aid of the investigation. In this the citizen is not a prosecutor."); *In re Lester,* 77 Ga. 143, 1886 WL 1476, at *3 (Ga.1886) (holding that "any citizen" can prosecute offenses or "give information of the fact to the grand jury"); *State v. Stewart,* 14 So. 143, 145 (La.1893) ("[T]he leading state witness[ ] went without summons or request before the grand jury, and gave his own version of the case against defendant, and instituted this prosecution. The witness had the undoubted right to go before the grand jury voluntarily, and disclose his knowledge of the case."); *In re Petition of Thomas,* 434 A.2d 503, 507 (Me.1981) (explaining limited

number of states do not permit private citizens to present their cases directly to the grand jury for some of the reasons expressed in this opinion.[6]   On the present record, and in light of our applicable statutes, court rules, case law, and policy rationales, we are unwilling to recognize a common law right of access to the grand jury by private citizens.

---

codification of common law right of grand jury access); *Piracci v. State,* 207 *Md.* 499, 115 *A.2d* 262, 268 (1955) ("[A]ny citizen who claims to have knowledge tending to show the commission of crimes has a right to ask permission to appear before the Grand Jury. . . . [T]he citizen should first exhaust his remedy before the magistrate and State's Attorney . . . ." (citing *Brack v. Wells,* 184 *Md.* 86, 40 *A.2d* 319, 321–24 (1944))); *Hott v. Yarborough,* 112 *Tex.* 179, 245 *S.W.* 676 (Tex. Comm'n App.1922) ("It is unquestionably the right, if not, in fact, the duty, of every one who has knowledge of the commission of a criminal offense . . . to call to the attention of the grand jury the facts within his knowledge. . . ."); *State ex rel. Miller v. Smith,* 168 *W.Va.* 745, 285 *S.E.2d* 500, 504–05 (1981) ("[B]y application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it.   This principle of approachability lies in the foundation of the very concept of a grand jury."); *cf. State ex rel. Wild v. Otis,* 257 *N.W.2d* 361, 364 (Minn.1977) ("While a citizen does not have a right to appear before the grand jury, he is free to attempt to get the grand jury to take action, and under [Minnesota court rules], the grand jury can permit an aggrieved citizen to appear as a witness for this purpose."), *cert. denied sub nom. Wild v. Otis,* 434 *U.S.* 1003, 98 *S.Ct.* 707, 54 *L.Ed.2d* 746 (1978).

   6 *See, e.g., Morgan v. Null,* 117 *F.Supp.* 11, 15 (S.D.N.Y.1953) ("New York State has long denied any right of a person to submit information to, or to be heard before, a grand jury."); *Holvoet v. State,* 689 *N.E.2d* 469, 472 (Ind.Ct.App.1997) ("In Indiana, a private citizen does not have a right to appear before the grand jury and present evidence of a crime."), *transfer denied sub nom. Holvoet v. Barnes,* 706 *N.E.2d* 167 (Ind.1998); *Case v. State,* 220 *So.2d* 289, 290 (Miss.1969) ("[T]he door to the grand jury should be closed to outsiders who are not witnesses and have no official business to perform."); *Walton v. Judge, Wyandot Cty. Common Pleas Court,* 64 *Ohio St.*3d 564, 597 *N.E.2d* 162, 163 (1992) (per curiam) ("[O]nly the prosecuting attorney, assistant prosecuting attorney, and, in certain cases, the Attorney General or special prosecutor appointed by the Attorney General have access to the grand jury."); *McCullough v. Commonwealth,* 67 *Pa.* 30, 1871 *WL* 10898, at *4 (Pa.1870) (prohibiting private citizen access to the grand jury as "a highly improper act on [the] part of such volunteers").

## IV.

■ In conclusion, we hold that a private person does not have the right to present an allegation or evidence of a crime to a grand jury. Accordingly, we reverse the judgment of the Appellate Division.

*For reversal*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.