Justice ALBIN,
dissenting.
A grand jury was impanelled to determine whether to return criminal charges against Ivonne Saavedra for the unlawful taking of documents from her employer, the North Bergen Board of Education. That Saavedra removed confidential documents from the Board’s office was made clear to the grand jury. Saavedra’s motive for removing those documents, however, was not disclosed to the grand jury because the prosecutor blocked a grand juror’s highly relevant questions posed to a witness. As a result, the grand jury was not told that Saavedra gave those documents to her attorney for the purpose of pursuing against the Board an employment discrimination lawsuit based on our Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. Nor was the grand jury told that Saavedra’s attorney — after he filed the lawsuit — provided the documents to the Board’s attorney in response to a discovery request. The prosecutor led the grand *79 jury to believe that Saavedra had spirited away the documents for some nefarious reason, and that the Board learned of the “theft” through its own investigation.
I cannot agree with the majority that Saavedra suffered no harm as a result of the prosecutor’s suppression of relevant information sought by the grand jury. The grand jury was entitled to answers to critical questions posed to a witness. The prosecutor subverted the grand jury’s independence and, in doing so, denied Saavedra her right to a fair grand jury presentation. Unlike the majority, I would dismiss the indictment and require the prosecutor to re-present the matter to a new grand jury.
In addition, the majority concedes that a claim-of-right defense is available to Saavedra. A jury must decide whether Saavedra’s taking of confidential documents for the purpose of pursuing a LAD or CEPA action falls within the realm of that defense. The grand jury, however, was never charged on that defense. Of equal concern is that the state of our law concerning the claim-of-right defense at the time of Saavedra’s alleged offense was hopelessly confusing as a result of this Court’s decision in Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 269-71, 8 A. 3d 209 (2010). The majority’s decision makes an attempt but does not succeed in clarifying Quinlan’s amorphous test. In the end, a reasonable person will not know in advance the line separating lawful from unlawful conduct.
I therefore respectfully dissent.
I.
A.
In November 2009, Saavedra filed a civil action against her employer, the North Bergen Board of Education, alleging violations of LAD and CEPA. In connection with the filing of this employment-discrimination lawsuit, Saavedra removed confidential documents from the Board’s office without permission. Approximately a year and a half after the filing of Saavedra’s lawsuit, her *80 counsel provided the confidential documents to the Board’s litigation attorney “in response to [the Board’s] requests for all documents in [defendant’s] possession which may include confidential and/or privileged information.” The Board’s litigation attorney alerted the Board’s general counsel, Jack Gillman, about the documents received in discovery. Gillman then contacted the Hudson County Prosecutor’s Office concerning the documents received during civil discovery.
Gillman was the only witness called by the prosecutor to testify before the grand jury. In response to questioning by the prosecutor, Gillman testified that Saavedra had 367 Board documents in her possession, of which at least 69 were originals. He explained the highly confidential nature of some of the documents. He also testified that she was not permitted to take any of those documents from the Board’s office.
After the prosecutor completed his questioning, a grand juror asked: “When did she take out these documents? What’s she going to do with them? The documents, what she do with them?” The prosecutor responded: “I don’t believe Mr. Gillman can speculate as to what she was going to do with the actual documents.”
However, Gillman did not have to speculate about what Saavedra had done with the documents. He knew, and so did the prosecutor. Gillman told the grand jury earlier that Saavedra had a lawsuit against the Board, and cryptically stated that “[a]nother attorney ... had received [highly confidential, very sensitive] documents in discovery.” But Gillman did not tell the grand jury that Saavedra gave the documents to the Board in discovery. The grand juror’s perceptive question would have disclosed that Saavedra’s motive was not that of a burglar but that of a plaintiff pursuing an employment discrimination lawsuit. Saavedra was not hiding the documents or concealing the truth. The prosecutor had no authority to censor information flowing to the grand jury— no authority to sustain his own objection to a legitimate and relevant question posed by a grand juror. Even if the information *81 possessed by Gillman could be classified as hearsay, it was admissible before the grand jury. See State v. Thrunk, 157 N.J.Super. 265, 278, 384 A.2d 906 (App.Div.1978) (noting that hearsay evidence is admissible before grand jury).
B.
“The grand jury is a judicial, investigative body, serving a judicial function; it is an arm of the court, not a law enforcement agency or an alter ego of the prosecutor’s office.” In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 141, 870 A.2d 249 (2005). It is “a bulwark against hasty and ill-conceived ‘prosecutions and continues to lend legitimacy to our system of justice by infusing it with a democratic ethos.’ ” Id. at 139, 870 A.2d 249 (quoting State v. Fortin, 178 N.J. 540, 638, 843 A.2d 974 (2004)).
The grand jury has “extraordinary powers,” including “the power to investigate upon its own suggestion.” Id. at 141-42, 870 A.2d 249 (internal citations and quotation marks omitted). For example, the grand jury “can direct the prosecutor to subpoena witnesses and evidence.” Id. at 142, 870 A.2d 249. Grand jurors, moreover, “have the right” to ask questions of witnesses. State v. White, 326 N.J.Super. 304, 314, 741 A.2d 143 (App.Div.1999), certif. denied, 163 N.J. 397, 749 A.2d 371 (2000). Indeed, the assignment judge instructs grand jurors that they have that right. Ibid. “[Ljegitimate inquiries of a grand juror should not be frustrated under the guise of screening” by a prosecutor. Ibid.; see also 31 New Jersey Practice, Criminal Practice and Procedure § 10:20, at 469 (Leonard N. Arnold) (2011-12) (stating that prosecutor may “screen questions that grand jurors wish to propound to witnesses so long as this does not infringe on the grand jury’s independence”).
The bottom line is that a prosecutor cannot thwart a grand jury’s effort to secure relevant evidence that will bear on its charging decision. The prosecutor’s role is to assist the grand jury, and “ ‘to see that justice is done.’ ” In re Loigman, supra, *82 183 N.J. at 144, 870 A.2d 249 (quoting State v. Frost, 158 N.J. 76, 83, 727 A.2d 1 (1999)). A prosecutor must scrupulously honor the grand jury’s independence, particularly because the prosecutor operates in that forum without the oversight of a judge or the cheek of a defense attorney. Id. at 144-45, 870 A.2d 249.
This case does not implicate our jurisprudence on the prosecutor’s affirmative duty to present exculpatory evidence — a duty that attaches regardless of a grand juror’s inquiries. State v. Hogan, 144 N.J. 216, 236, 676 A.2d 533 (1996). This case simply involves the fundamental right of a grand juror to ask questions intended to elicit relevant information. By suppressing a grand juror’s legitimate questions and rationing the evidence, the prosecutor allowed a distorted picture of Saavedra’s motives. The grand jury had a right to the information it requested, and Saavedra had the “right to a fair grand jury presentation.” See In re Loigman, supra, 183 N.J. at 145, 870 A.2d 249.
I would dismiss the indictment and allow the prosecutor to present the matter again to a grand jury.
II.
I agree with the majority that Saavedra is entitled to assert a claim-of-right defense — a justification defense — at trial. I also would require that the grand jury be charged on such a defense, provided evidence suggests that Saavedra took the documents under a lawful claim of right for the purpose of pursuing a LAD and CEPA action. See 31 Criminal Practice and Procedure, supra, § 10:20, at 469 (noting prosecutor’s obligation to charge on “the gist of [an] exonerating defense or justification”). Any reliance on a justification defense must relate to the time Saavedra is alleged to have committed the offense of theft. See State v. Perez, 220 N.J. 423, 438, 106 A.3d 1212 (2015) (stating that Ex Post Facto Clause of the U.S. Constitution prohibits law that “deprives one charged with crime of any defense available ... at the time when the act was committed” (internal quotation marks omitted)). We cannot apply retroactively a newly minted justifica *83 tion defense that was not on the books during the relevant time period if it disadvantages Saavedra. See State v. Natale, 184 N.J. 458, 491, 878 A.2d 724 (2005) (stating that retrospective application of law that disadvantages defendant violates Ex Post Facto Clause). A court must identify the prevailing law governing Saavedra’s conduct at the time she took the documents from the Board’s office.
In Quinlan, supra, 204 N.J. at 269-71, 8 A.3d 209, the Court articulated a seven-factor totahty-of-the-cireumstances test in deciding whether the taking of an employer’s documents is protected activity under LAD. That test hardly places a reasonable person on notice of the line demarcating lawful from unlawful conduct. The test asks the trier of fact to determine: (1) how the employee came to possess the document; (2) “what the employee did with the document”; (3) “the nature and content of the particular document in order to weigh the strength of the employer’s interest in keeping the document confidential”; (4) whether the employee violated a “clearly identified company policy” on confidentiality; (5) “the circumstances relating to the disclosure of the document to balance its relevance against considerations about whether its use or disclosure was unduly disruptive to the employer’s ordinary business”; (6) “the strength of the employee’s expressed reason for copying the document”; and (7) how the court’s decision in the particular ease “bears upon” the “broad remedial purposes” of LAD and “the effect, if any, that either protecting the documents by precluding its use or permitting it to be used will have upon the balance of legitimate rights of both employers and employees.” Id. at 269-71, 8 A.3d 209.
The Quinlan factors do not define a clear and understandable claim-of-right defense in civil or criminal cases because the standard is too amorphous, too wide open — too susceptible to various inconsistent outcomes. Employees need standards they can grasp at the time they make decisions rather than later, when a court is passing judgment on their conduct.
*84 The majority holds that “the Quinlan balancing test for LAD retaliation cases does not govern the availability of a claim of right or other justification in a criminal prosecution.” Ante at 77, 117 A.3d at 1191. However, the majority’s valiant effort to make the claim-of-right defense sufficiently clear — to give fair notice of the limits placed on an employee’s conduct — also falls short. The majority states that, in considering a claim-of-right defense, “the jury may consider such issues as[:]
[1] the contents of the documents,
[2] the presence or absence of confidentiality policies,
[3] the privacy interests at stake,
[4] the circumstances under which defendant gained access to the documents,
[5] the extent to which she disclosed them, and
[6] her reasons for taking an original or copying a document rather than simply seeking it in discovery.
[Ante at 77, 117 A.3d at 1191.]
The majority’s approach suffers from the same shortcomings as the Quinlan approach in a LAD case — it does not give reasonable and clear notice of what the law proscribes before an employee acts. The law should not place whistleblowers in a position where they are playing Russian roulette with their careers or their liberty. Like the Quinlan standard, the majority’s new approach is overly complicated and too open to differing interpretations.
Furthermore, the majority has not identified whether reasonable persons in 2009 would have anticipated the standard it now enunciates.
To the extent there is any distance between the standards set forth in Quinlan and here, it may be possible that an employee taking confidential documents from an employer’s files to pursue a LAD claim will win a multi-million dollar discrimination lawsuit but serve time in prison for committing a crime. The potential for such discordant results will not bring credit to our justice system.
*85 III.
At least going forward, I favor a much simpler approach to claim-of-right defenses in both civil and criminal cases, the one I articulated in my dissent in Quinlan. Under my template, an employee would be permitted to take a confidential document to an appropriate authority only if the document “clearly indicates that the employer was engaged in illegal conduct.” See Quinlan, supra, 204 N.J. at 282, 8 A.3d 209 (Albin, J., dissenting). Moreover, an employee with a potential LAD or CEPA claim may “have the right to preserve a document that he or she reasonably believes an employer is about to destroy or alter.” Ibid. On the other hand, when an employee has an ongoing lawsuit and no reasonable fear that the employer will destroy relevant evidence, the taking of confidential documents by an employee cannot be justified. Ibid.

TV.

In summary, I would dismiss the indictment because the prosecutor undermined the independence of the grand jury by interfering with its ability to elicit relevant information bearing on the decision whether to return an indictment. If the Quinlan standard was the reigning law for claim-of-right defenses, then, like Judge Simonelli, the dissenting judge in the Appellate Division, State v. Saavedra, 433 N.J.Super. 501, 536, 81 A.3d 693 (2013) (Simonelli, J.A.D., dissenting), I have doubts that the law gave clear notice of the line demarcating criminal from non-criminal conduct. Last, if the documents taken by Saavedra were irrelevant to her LAD action, then the claim-of-right defense should not be available.
Accordingly, I respectfully dissent.
For affirmance and remandment — Chief Justice RABNER and Justices LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON and Judge CUFF (temporarily assigned) — 6.
For dissent — Justice ALBIN — 1.