NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1145-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ZAIRE J. CROMEDY,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 4, 2024**
>
> **APPELLATE DIVISION**

Argued February 5, 2024 – Decided March 4, 2024

Before Judges Sabatino, Mawla, and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-10-1004.

Brynn Giannullo argued the cause for appellant.

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Catlin A. Davis, Deputy Attorney General, and Jennifer E. Kmieciak, on the briefs).

The opinion of the court was delivered by

MAWLA, J.A.D.

Defendant Zaire J. Cromedy appeals from his sentence on a conviction for unlawful possession of a handgun without a permit, pursuant to N.J.S.A. 2C:39-

5(b)(1) and N.J.S.A. 2C:39-5(j). Because defendant was previously convicted of charges subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.1, his conviction was upgraded from a second- to a first-degree offense pursuant to N.J.S.A. 2C:39-5(j). The Graves Act, N.J.S.A. 2C:43-6(c), provides a mandatory term of incarceration for certain unlawful possession convictions. As a result, defendant was sentenced to a mandatory period of parole ineligibility for his first-degree conviction. He argues the Graves Act does not apply to N.J.S.A. 2C:39-5(j). We hold N.J.S.A. 2C:39-5(j) is a grading statute that enhances the degree of the offense and subjects those with a prior conviction under NERA who are later convicted of a firearms offense under N.J.S.A. 2C:39-5(a), (b), (c), or (f), to enhanced sentencing under the Graves Act.

A grand jury indicted defendant on second-degree eluding, N.J.S.A. 2C:29-2(b) (count one), and first-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) and N.J.S.A. 2C:39-5(j) (count two). Pursuant to a plea agreement, defendant pled guilty to count two and the State agreed to dismiss count one, a separate indictment for a certain person not to possess a firearm offense, and several motor vehicle violations.

The State recommended a ten-year prison sentence with a five-year period of parole ineligibility pursuant to the Graves Act, which provides as follows:

> A person who has been convicted under subsection . . . a., b., c., or f. of N.J.S.[A.] 2C:39-5 . . .

shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at one-half of the sentence imposed by the court or [forty-two] months, whichever is greater . . . , during which the defendant shall be ineligible for parole.

[N.J.S.A. 2C:43-6(c).]

During the plea proceeding and in defendant's plea form, the defense reserved its right to argue Graves Act parole ineligibility did not apply to a conviction under N.J.S.A. 2C:39-5(j). At sentencing, defense counsel argued there was a "drafting gap" in the Graves Act that resulted in N.J.S.A. 2C:39-5(j) being "left out" of the mandatory minimum sentencing requirement. The State countered that N.J.S.A. 2C:39-5(j) is a grading statute, which incorporates N.J.S.A. 2C:39-5(b), and should be read in pari materia to effectuate the Legislature's intent to impose the mandatory minimums required under the Graves Act on first-degree offenses.

The sentencing judge rejected the defense's argument, and ruled the Legislature did not intend to permit a lesser sentence for a first-degree offense than a crime of a lower degree. The judge found defendant had a "significant criminal history that began when he was" a juvenile. In 2013, defendant pled guilty to a prohibited weapons offense, N.J.S.A. 2C:39-3(e), and was charged with murder later that year and pled guilty to reckless manslaughter, N.J.S.A.

2C:11-4(b)(1). Defendant also had seven unadjudicated municipal court violations.

The judge found no mitigating factors and the following aggravating factors: three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of defendant's prior criminal record, N.J.S.A. 2C:44-1(a)(6); and nine, the need to deter the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). Defendant was sentenced to ten years of imprisonment with five years of parole ineligibility.

We initially heard defendant's appeal on our sentencing oral argument calendar. The parties reiterated their arguments regarding the applicability of the Graves Act to defendant's conviction. Given the unresolved issue of law, we transferred the matter to be heard with briefing on our plenary calendar.

I.

Defendant raises the following point on appeal:

> POINT I – THE MANDATORY PERIOD OF PAROLE INELIGIBILITY UNDER THE GRAVES ACT DOES NOT APPLY TO CONVICTIONS UNDER N.J.S.A. 2C:39-5(J) AND THE CASE MUST BE REMANDED FOR RESENTENCING.

Specifically, defendant asserts the Graves Act does not apply to N.J.S.A. 2C:39-5(j), because the Legislature only delineated the weapons offenses in N.J.S.A. 2C:39-5(a), (b), (c), and (f) in the statute. He asserts we should apply

the canon of "expressio unius est exclusio alterius—expression of one thing suggests the exclusion of another left unmentioned" to interpret the statute. Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004). Defendant argues the Legislature intended to exclude N.J.S.A. 2C:39-5(j) from the Graves Act because it amended N.J.S.A. 2C:43-6(c) the same day N.J.S.A. 2C:39-5(j) was enacted and did not reference the latter statute in the Graves Act. He asserts we need search no further than the plain language of the statute to interpret it, and neither extrinsic evidence nor "judicial surgery" is required to understand the statute.

Defendant argues that, as a first-degree crime, N.J.S.A. 2C:39-5(j) is subject to N.J.S.A. 2C:43-6(a)(1), which states "[e]xcept as otherwise provided, a person . . . may be sentenced . . . for a specific term of years which shall be fixed by the court and shall be between [ten] years and [twenty] years . . . ." Therefore, whether the Legislature intentionally or inadvertently omitted N.J.S.A. 2C:39-5(j) from the Graves Act is irrelevant because the sentence is controlled by N.J.S.A. 2C:43-6(a)(1).

At oral argument before us, the defense also asserted the grand jury presentment and the model jury charge for N.J.S.A. 2C:39-5(j) were further indicia the State considered the offense to be a stand-alone crime. We directed the parties to submit supplemental briefs addressing the import of the grand jury

proceeding and the model jury charge, and have considered those helpful submissions.

As to the grand jury, the defense argues the State presented N.J.S.A. 2C:39-5(j) as a separate charge for "grand jurors to consider, deliberate upon, and return a true bill." The defense points to the fact the State told the grand jurors to consider defendant's prior criminal conviction as an element of the first-degree unlawful possession of a weapon. Therefore, the State considered N.J.S.A. 2C:39-5(j) as a separate offense, not a grading statute.

The defense asserts the model jury instruction for N.J.S.A. 2C:39-5(j) requires the jury to find "the defendant has a prior conviction of an enumerated crime in N.J.S.A. 2C:43-7.2" as an element of the offense. Model Jury Charges (Criminal), "Unlawful Possession of a Handgun—Prior NERA Conviction (First Degree) N.J.S.A. 2C:39-5(j)" (approved June 11, 2018). Defendant asserts the model charge is proof N.J.S.A. 2C:39-5(j) is a separate offense because "[t]here does not appear to be any other 'sentencing enhancement' in the [criminal code] that requires such a process, evincing the Legislature's intent to make this its own substantive crime."

According to the defense, a conviction under N.J.S.A. 2C:39-5(j) already enhances the penalty for the offense, because "[a] person with a prior conviction is exposed to double the amount of time as someone sentenced as a second-

degree gun offender." The Legislature intended that ten-to-twenty years "was punishment enough that it did not enact a stipulated period of parole ineligibility."

## II.

This appeal raises questions of law. State v. S.B., 230 N.J. 62, 67 (2017). Therefore, our review is de novo. Ibid.

"A fundamental tenet of statutory construction is that 'every effort should be made to harmonize the law relating to the same subject matter. Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent.'" N.E.R.I. Corp. v. N.J. Highway Auth., 147 N.J. 223, 248-49 (1996) (Stein, J. dissenting) (quoting State v. Green, 62 N.J. 547, 554-55 (1973)). "When interpreting different statutory provisions, we are obligated to make every effort to harmonize them, even if they are in apparent conflict." State v. Gomes, 253 N.J. 6, 15-16 (2023) (quoting In re Gray-Sadler, 164 N.J. 468, 485 (2000)).

"The overriding goal" of statutory interpretation "is to determine . . . the intent of the Legislature, and to give effect to that intent." State v. Hudson, 209 N.J. 513, 529 (2012). The analysis begins with "the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." Ibid. "Where the plain language of a statute is clear, we

enforce the statute as written." Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

"If the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources." Hudson, 209 N.J. at 529. "[E]xtrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question; however, when the statutory language results in more than one reasonable interpretation, then resort may be had to other construction tools . . . in the analysis." Id. at 529-30 (citing State v. Shelley, 205 N.J. 320, 323-24 (2011)). The court may also resort to extrinsic evidence "if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." DiProspero, 183 N.J. at 493. This evidence may "includ[e] legislative history, committee reports, and contemporaneous construction." Id. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

## A.

We decline to rely upon expressio unius est exclusio alterius because it is subordinate to "the doctrine that courts will construe the details of an act in conformity with its dominating general purpose." Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n.23 (1983). "At best, this maxim is merely an

aid in determining legislative intent, not a rule of law." <u>Allstate Ins. Co. v. Malec</u>, 104 N.J. 1, 8 (1986).

The fact the Legislature amended the Graves Act on the same day it enacted N.J.S.A. 2C:39-5(j) does not convince us of its intent. The sponsors' statement accompanying the 2013 amendments to the Graves Act provides in pertinent part, as follows:

> This bill <u>upgrades</u> the crime of unlawful possession of a firearm to a first[-]degree crime in certain circumstances and amends various penalty provisions under the Graves Act.
>
> . . . .
>
> The bill also amends sentencing under the Graves Act, . . . ([N.J.S.A. ]2C:43-6), which sets forth mandatory minimum terms of imprisonment for persons convicted of certain firearms related offenses or offenses where a person possessed or used a firearm during the commission of a crime.
>
> The Graves Act provides that a person convicted of unlawful possession of a machine gun, handgun, rifle or shotgun, in violation of subsections a., b. and c., respectively, of N.J.S.[A. ]2C:39-5 is subject to a mandatory minimum period of parole ineligibility. Under current law, the minimum term of imprisonment is three years.
>
> . . . .
>
> The bill also increases the mandatory minimum period of parole ineligibility under the Graves Act from three years to [forty-two] months.

Finally, the bill clarifies that individuals convicted of the unlawful possession of a BB gun, air gun or spring gun, be it a handgun, rifle, [or] shotgun, are not subject to the mandatory sentences imposed under the Graves Act. Similarly, individuals convicted of the unlawful possession of an unloaded rifle or shotgun are also exempt from the mandatory sentences imposed under the Graves Act.

The bill adds unlawful possession of an assault firearm to the list of crimes for which Graves Act sentencing applies. Further, the provisions of the bill increase the mandatory minimum period of parole eligibility from three years to [forty-two] months. The bill also provides that the mandatory minimum term will not apply to unlawful possession of a handgun, rifle or shotgun if the firearms are in the nature of an air gun, spring gun or pistol[,] or other weapon of a similar nature, or to the unlawful possession of an unloaded rifle or shotgun.

[Sponsors' Statement to S. 2804 (May 13, 2013) (L. 2013, c. 113) (emphasis added).]

The statement not only evinces the Legislature's intent to upgrade weapons possession offenses, it also sets forth the offenses the Legislature exempted from the Graves Act, namely, convictions for unlawful possession of a BB gun, air gun, or spring guns, and those convicted of the unlawful possession of an unloaded rifle or shotgun. Ibid. Therefore, if the Legislature wanted to exempt first-degree unlawful weapons offenses from the Graves Act, it would have said so. "The Legislature knows how to draft a statute to achieve [a] result

when it wishes to do so." State v. W. World, Inc., 440 N.J. Super. 175, 198 (App. Div. 2015) (quoting Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009)).

Even more compelling is the fact that if we interpreted the Graves Act in the manner urged by defendant, those convicted of first-degree firearm offenses, like defendant, could serve lesser sentences than individuals convicted of lower-degree firearm offenses under subsections N.J.S.A. 2C:39-5(a), (b), (c), or (f). Indeed, the sentencing ranges for second-, third-, and fourth-degree offenses are five to ten years, three to five years, and not to exceed eighteen months, respectively. N.J.S.A. 2C:43-6(a)(2) to (4). If a conviction under N.J.S.A. 2C:39-5(j) was exempt from the Graves Act, a first-degree offender could arguably receive a ten-year sentence and become eligible for parole before a second-degree offender. We decline to interpret N.J.S.A. 2C:43-6(c) and N.J.S.A. 2C:39-5(j) in such a fashion, because it would lead to an absurd result.

The more sensible interpretation of N.J.S.A. 2C:39-5(j) is as a grading statute. Other examples of grading statutes enacted by the Legislature demonstrate our point. N.J.S.A. 2C:14-2(a)(1) upgrades sexual assault of a victim less than thirteen years old to a first-degree offense and mandates a minimum sentence of twenty-five years of imprisonment before parole eligibility. See State v. Drury, 190 N.J. 197, 210 (2007) (explaining sexual assault is a second-degree offense which "may be elevated to aggravated sexual

assault, a first-degree crime, under certain circumstances"). Conversely, subject to certain conditions, N.J.S.A. 2C:44-1(e) allows a court not to impose a term of imprisonment for "a person convicted of an offense other than a crime of the first or second degree, who has not previously been convicted of an offense."

These examples demonstrate the Legislature can express the gradation of a penalty for a certain offense and when a defendant shall not be subject to a penalty. N.J.S.A. 2C:39-5(j) is an expression of the former. By virtue of upgrading an unlawful weapons possession offense where a defendant had a prior NERA conviction, the Legislature intended that first-degree offenses become subject to the Graves Act. Because defendant had a prior NERA conviction and was convicted here of N.J.S.A. 2C:39-5(b)(1), N.J.S.A. 2C:39-5(j) upgrades his crime to a first-degree offense, and he must serve a mandatory period of parole ineligibility pursuant to N.J.S.A. 2C:43-6(c).[1]

B.

The arguments related to the grand jury presentment do not convince us N.J.S.A. 2C:39-5(j) is a stand-alone offense. Our Supreme Court has noted the Sixth Amendment requires "the truth of every accusation" in a criminal trial be proven to a jury "beyond a reasonable doubt." Apprendi v. New Jersey, 530

---

[1] We do not endorse the unpublished case law cited by defendant that treated a subsection (j) offense as a "substantive" crime.

U.S. 466, 477-78 (2000). The grand jury process serves many purposes, including "protect[ing] the innocent from unfounded prosecution." State v. Hogan, 144 N.J. 216, 228 (1996) (quoting State v. Murphy, 110 N.J. 20, 29 (1998)). Even more fundamentally, a grand jury presentment affords a defendant with notice of the charges against them. Indeed, the Court stated:

> The New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense, unless on the . . . indictment of a grand jury . . . ." N.J. Const. art. I, ¶ 8. That fundamental protection in the charging process has been embedded in our law for more than two centuries and has its roots in English history.
>
> [In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 138 (2005) (alteration in original).]

Therefore, considering the purpose of the grand jury process, the method in which the State presented N.J.S.A. 2C:39-5(j) to the grand jury does not convince us the State viewed the statute as a separate offense. Moreover, the decision made by the State in its presentment does not override our statutory analysis and conclusion the Legislature intended N.J.S.A. 2C:39-5(j) to serve as a grading statute.

Our view is undergirded by a similar situation confronted by the United States Supreme Court in Almendarez-Torres v. United States, 523 U.S. 224 (1998). There, the federal statute, 8 U.S.C. § 1326(a), made it a crime for an undocumented person "who once was deported to return to the United States

without special permission, and . . . authorize[d] a prison term of up to, but no more than two years." Id. at 226. However, 8 U.S.C. § 1326(b)(2) authorized "a prison term of up to, but no more than, [twenty] years for 'any [undocumented person] described' in subsection (a), if the initial 'deportation was subsequent to a conviction for commission of an aggravated felony.'" Ibid. (quoting 8 U.S.C. § 1326(b)(2)).

Almendarez-Torres's initial deportation was pursuant to three earlier convictions for aggravated felonies. Id. at 227. He then unlawfully returned to the United States and was charged by a grand jury with violating § 1326. Ibid. At sentencing, he argued the indictment did not mention his earlier aggravated felony convictions, and therefore the court could not sentence him to more than two years imprisonment. Ibid. The District Court rejected his argument and sentenced him to eighty-five months of imprisonment. Ibid. The Fifth Circuit affirmed and held § 1326(b)(2) "is a penalty provision which simply permits a sentencing judge to impose a higher sentence when the unlawfully returning [person] also has a record of prior convictions." Ibid.

As is the case here, the Court reviewed the case to resolve a split among the circuit courts of appeal regarding the statute. Id. at 228. In addition to reviewing the federal indictment process, performing a statutory interpretation to understand Congress's intent, which we need not discuss here, the Court found

A-1145-22

14

§ 1326(b)(2) was not a stand-alone offense because interpreting the statute that way "risks unfairness." Id. at 234. Indeed, defendant's interpretation of the statute would prejudice the defense because it would require the government to introduce evidence of a defendant's prior crimes. Id. at 235. The Court was unconvinced "Congress would have wanted to create this kind of unfairness in respect to facts that are almost never contested." Ibid. Moreover, sanitization would be unavailing because "jurors would still learn, from the indictment, the judge, or the prosecutor, that the defendant had committed an aggravated felony." Ibid. The Court concluded "Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense." Ibid.

We reach the same conclusion here. Defendant's prior conviction for a NERA offense upgrades defendant's offense to a first-degree offense—and with it the punishment. It is not a consideration for the jury because defendant's prior conviction speaks for itself. Moreover, "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476 (emphasis added) (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)). Introducing evidence of a prior conviction, no matter how well sanitized, would severely prejudice the defense. We do not

A-1145-22

15

believe our Legislature intended to prejudice the defense this way and decline to interpret N.J.S.A. 2C:39-5(j) in such a fashion.

C.

Finally, we reject defendant's argument the model jury charge should dictate the outcome. The model charge for N.J.S.A. 2C:39-5(j) reads as follows:

> In order to convict the defendant, the State must prove each of the following elements beyond a reasonable doubt:
>
> > 1. S-___ is a handgun
> >
> > 2. That the defendant knowingly possessed the handgun; and
> >
> > 3. That the defendant did not have a permit to possess such a weapon.
> >
> > 4. That the defendant has a prior conviction of an enumerated crime in N.J.S.A. 2C:43-7.2, which the State alleges is the crime of . . . .
>
> [Model Jury Charges (Criminal), "Unlawful Possession of a Handgun—Prior NERA Conviction (First Degree) N.J.S.A. 2C:39-5(j)" (approved June 11, 2018).]

Notwithstanding the language of the charge, our Supreme Court has held "the model charges are not binding statements of law." State v. O'Donnell, 255 N.J. 60, 79 (2023). This is because the "[m]odel jury charges are crafted by a committee of skilled lawyers and judges who volunteer their time." Ibid.

However, "because of practical limitations, [our courts do] not evaluate model jury charges other than when they are reviewed as part of an appeal." Ibid.

For these reasons as well, we cannot rely on the model jury charge to guide the outcome here. We respectfully recommend to the Court to consider directing the Committee on Model Jury Charges to revise the model charge to include a notation that conforms to this opinion. To the extent we have not addressed an argument raised on the appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION